135 S.W.3d 165 (2004)
In the Interest of S.A.P., a Child.
No. 10-02-345-CV.
Court of Appeals of Texas, Waco.
March 17, 2004.
*166 Charles L. Levy, Nita C. Fanning, Waco, for appellant/relator.
Lana Shadwick, Appellate Division, Houston, appellee/respondent.
C. Kevin Keathley, Law Office of Kevin Keathley, Waco, for ad litem.
Before Chief Justice GRAY, Justice VANCE, and Justice REYNA[*].

OPINION
BILL VANCE, Justice.
Rebecca Williams Peterson's and Jay Scott Peterson's parental rights to S.A.P. were terminated in November 2002. They each brought several issues on appeal, complaining about (1) the legal and factual sufficiency of the evidence, (2) the testimony of Dr. Jim Shinder, and (3) the effect of letters from the Texas Department of Protective and Regulatory Services ("TDPRS") that indicated the Department had ruled out their involvement in the alleged abuse or neglect that precipitated S.A.P.'s removal. In addition, Rebecca raises two issues regarding the constitutionality of statutes dealing with the effect of a prior termination, and Scott brings one charge issue. We find that the June 21, 2001, letters from TDPRS estopped the Department from bringing this termination proceeding. Accordingly, we will reverse and remand.

BACKGROUND
On June 8, 2001, Rebecca gave birth to S.A.P. at a hospital. That night or the next day, TDPRS workers came to her room as she was nursing her newborn, told her to stop breastfeeding her son, and said that she would not be able to take him home. Rebecca said that they did not explain why, except to allude to the Department's involvement with her two older children, to whom her parental rights were previously terminated. Scott was not present at the time but found out later that the Department would be taking his baby. He also testified that they did not tell him why. However, caseworker Tiffany Gonzales testified that they had received a hotline phone call. She said that it is Departmental policy to tell the parents why their child is being removed. The emergency removal notice listed "Risk of Abandonment" as the reason for removal. TDPRS took physical custody of S.A.P. at the hospital on June 11, 2001. About two weeks later, Rebecca and Scott received letters from TDPRS, dated June 21, 2001, stating that the Department had ruled out any allegations of abuse or neglect by Rebecca or Scott against S.A.P.
Nevertheless, after S.A.P. was removed from his parents, TDPRS offered them services with the stated goal of family reunification. These "offered" services became court ordered. Not only did Scott and Rebecca participate in these services, they also voluntarily took parenting classes and participated in private parenting counseling and religious, pre-marital counseling.

Termination of Parental Rights
After a week-long trial, a jury found the following:
 Rebecca Williams [Peterson] has engaged in conduct or knowingly placed [S.A.P.] with persons who engaged in conduct which endangers the physical or emotional well-being of the child; [TEX. FAM.CODE ANN. § 161.001(1)(E) ]

*167  Rebecca Williams [Peterson] has had her parent-child relationship terminated with respect to another child based on a finding that the mother's conduct was in violation of § 161.001(D) or (E),[1] Texas Family Code, or substantially equivalent provisions of the law of another state; [TEX. FAM.CODE ANN. § 161.001(1)(M) ]
 Based on clear and convincing evidence, termination of the parent-child relationship between Rebecca and S.A.P. is in S.A.P.'s best interest;[TEX. FAM.CODE ANN. § 161.001(2) ]
 Jay Scott Peterson has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; [TEX. FAM.CODE ANN. § 161.001(1)(E)]
 Jay Scott Peterson has failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; [TEX. FAM.CODE ANN. § 161.001(1)(0)]
 Based on clear and convincing evidence, termination of the parent-child relationship between Scott and S.A.P. is in S.A.P.'s best interest. [TEX. FAM. CODE ANN. § 161.001(2) ]
The court entered the final order of termination as to both Rebecca and Scott on November 27, 2002.

ISSUES
Rebecca and Scott brought separate appeals. Rebecca brought six issues on appeal:
1. The evidence was legally and factually insufficient to support the jury's finding that Rebecca engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
2. The evidence was legally and factually insufficient to support the jury's finding that termination was in S.A.P.'s best interest;
3. The State should be estopped from basing a termination on neglect or abuse of a child in a case where they have affirmatively stated that they ruled out neglect or abuse of that child;
4. The court erred by admitting Dr. Shinder's testimony without conducting a Daubert hearing, when such a hearing was requested;
5. Section 161.211 of the Family Code violates parents' constitutional rights to due process; and
6. When prior termination of parental rights serves as the basis for termination *168 in a later case, the earlier termination should have been valid.
Scott appealed the following issues:
1. Did the court err in submitting a charge that included a definition of "endanger" that commented on the weight of the evidence admitted at trial?
2. Did the court err in allowing Dr. Jim Shinder to testify on behalf of TDPRS?
3. Did the court err in requiring Scott to be evaluated and counseled by Dr. Shinder and his associates?
4. Did the court err by failing to dismiss the case against Scott because the allegations had been ruled out by TDPRS, or by allowing TDPRS to use evidence against Scott that it had represented would be permanently destroyed?
5. Was the evidence legally and factually sufficient to support the jury's findings?
Because we believe it will be dispositive, we first address the issues of the TDPRS letters and estoppel.

EFFECT OF TDPRS LETTERS
Both Rebecca and Scott argue about the effect of virtually identical letters that they each received dated June 21, 2001. Both parents argue that the Department, having sent the letters, should have been estopped to bring the termination proceedings. In the alternative, Scott argues that TDPRS should not have been permitted to use evidence that it had represented would be permanently destroyed. Both parents brought challenges based on the letters, which were addressed in a pre-trial hearing on November 18, 2002, the transcript of which occupies over one hundred pages of the record. The court initially granted a motion in limine that would have prevented the Department from introducing any evidence that related to the factual basis initially used to remove S.A.P. from his parents without first approaching the bench. Two days later, prior to opening statements and after additional argument by the attorneys,[2] the court withdrew its prior ruling on the motion in limine.
The letters, which differed only in that one was addressed to Rebecca Williams and one to Jay Peterson, stated that the Department had ruled out any allegations of abuse or neglect by Rebecca or Scott against S.A.P.:
Child Protective Services has completed an investigation based on a report dated 6/8/2001 that you were responsible for abuse or neglect of one or more children in the above named case [Williams, Rebecca L.]. Agency staff has concluded that you did not have a role in the alleged abuse or neglect. We will be offering services to your family to remedy any other problems identified during the investigation. Because all allegations involving you as an alleged perpetrator have been ruled out, you have the right to request that we remove information about your alleged role from our records....
The letter went on to explain that each parent should fill out an attached form in order to make such a request. The form, "Request for Removal of Role Information From Child Protective Service Case," stated, immediately above the signature block, that making such a request would effect the complete removal and permanent destruction of information from the Department's records.

*169 IMPORTANT INFORMATION ABOUT YOUR RIGHTS
Once the role information involving you is removed from our records, THIS IFORMATION WILL BE PERMNENTLY DESTROYED AND WILL NOT BE AVAILABLE TO USE FOR ANY PURPOSE WHATSOEVER. Before deciding whether or not to request that the role information involving you be removed from the department's records, you should consider the following:
1. Once the information is removed, the department's official business record will no longer reflect that you were alleged to have committed abuse or neglect in this investigation.
2. Once the information is removed, the department's official business record will no longer reflect that you were found NOT to have committed abuse or neglect. We will also not have a complete record of the investigation information which led us to conclude that you did not commit abuse or neglect.
3. If, for any reason, you wish to prove that someone falsely reported you for abuse or neglect, our records will not reflect the fact that the report against you was made once this information is removed.
Because this choice may have important consequences, you may wish to consult a private attorney for legal advice as to whether or not you should request that this information be removed.
Both Scott and Rebecca signed and returned the forms on July 6, 2001, and August 6, 2001, respectively.
The broad concept embodied in the doctrine of estoppel is that a person who by his speech or conduct has induced another person to act in a particular manner ought not be permitted to adopt an inconsistent position, attitude, or course of conduct to the loss or injury of such other. In the Interest of Moragas, 972 S.W.2d 86, 90 (Tex.App.-Texarkana 1998, no pet.) (citing First State Bank v. Dyer, 248 S.W.2d 785, 788 (Tex.Civ.App.-Waco 1952), affm'd 151 Tex. 650, 254 S.W.2d 92). The doctrine of equitable estoppel requires (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations. Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 515-16 (Tex.1998). The principle of estoppel is ordinarily not applicable to the state or governmental unit exercising its governmental powers. City of Hutchins v. Prasifka, 450 S.W.2d 829, 835 (Tex.1970); Clear Lake City Water Authority v. Winograd, 695 S.W.2d 632, 640 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.). However, Texas courts have recognized an exception to this rule, in exceptional circumstances, where the application of estoppel is necessary to prevent manifest injustice and will not interfere with governmental functions. Hutchins, 450 S.W.2d at 836; Roberts v. Haltom City, 543 S.W.2d 75, 80 (Tex.1976); Clear Lake City Water Authority, 695 S.W.2d at 640 ("[A] municipal or quasi-municipal corporation may be estopped, where justice, honesty, and fair dealing require it."). In this context, "injustice" requires some inequitable conduct by the party sought to be estopped. Dallas County Flood Control Dist. No. 1 v. Cross, 815 S.W.2d 271, 284 (Tex.App.-Dallas 1991, writ denied).
In this case, after removing S.A.P. from his parents days after his birth, TDPRS represented to Scott and Rebecca *170 that it had determined that neither parent had a role in the alleged abuse or neglect of S.A.P. Nevertheless, TDPRS did not return S.A.P. to his parents' care. In fact, nowhere in the records of the status hearings, conducted regularly during the seventeen months between S.A.P.'s birth and the termination trial, is there any indication that TDPRS informed the court that "agency staff [had] concluded that [the parents] did not have a role in the alleged abuse or neglect." The Department removed S.A.P. days after his birth based on risk of abandonment.[3] The factual basis for this "risk" was the parents' course of conduct with their other, older children. The letter sent on June 21, 2001, effectively exonerated the parents of the only allegations against them regarding S.A.P. Then, the Department moved to terminate their parental rights under a variety of provisions of the Family Code. No other conduct occurred that was detrimental to S.A.P., who was in the Department's custody.
TDPRS asserted at trial and on appeal that, notwithstanding the plain language, the letters that Scott and Rebecca received meant only that they could request a "role designation" be removed from the Department's internal database. Accepting this as true, we find that each letter constituted a false representation or concealment of facts made with actual or constructive notice on the part of TDPRS that the letter meant something other than it indicated. Likewise, we have little difficulty finding that TDPRS intended that the letters should be acted on because the letters were accompanied by the forms that Scott and Rebecca signed and returned to the Department. As to the fourth element, Scott testified, although perhaps inartfully but without contradiction, that he and Rebecca did not have access to TDPRS's internal procedures. Therefore, we find that both Scott and Rebecca were parties "without knowledge or means of obtaining knowledge" of the fact that the letter meant something other than what it said.
Turning to the fifth element, we must consider whether Scott and Rebecca detrimentally relied on the representations. Scott argues simply that he was deprived of "his right to due process under the U.S. Constitution and Texas Constitution." Rebecca argues that "the State should have been held to its promise to destroy the documents and not use them for any purpose, and thereby estopped from using any of the questionable evidence or documents referred to in the letter." TDPRS responds that "the form letter does not judicially decree that a case must be dismissed." Because we are not considering judicial estoppel, we find the Department's assertion to be inapposite.
Throughout this case, both Scott and Rebecca have denied abusing, neglecting, or endangering S.A.P. in any way. They sent in the forms, only to find that doing so did not end the Department's possession of S.A.P. Scott testified at a pre-trial hearing, on November 18, 2002, that when he received the letter and the role removal form, he called the Austin TDPRS office. He said, during cross-examination, that he did not recall the name of the person whom he spoke to, but that he was told TDPRS would close the case if he sent in the form.[4]
*171 TDPRS ATTORNEY: Okay. So they just sent you the form. Did you talk to anyone at the Austin office?
SCOTT PETERSON: Yes.
TDPRS ATTORNEY: Do you remember who that was?
SCOTT PETERSON: Not offhand.
TDPRS ATTORNEY: And they told you they would send you a form and you got it?
SCOTT PETERSON: No. This was sent to me with this letter plus the back of that. I called and asked the situation, what was I supposed to do to clear it up. I signed it, sent it in, and I also made sure that they received it, which they did.
TDPRS ATTORNEY: Okay. So you didn't call and have them explain it to you, what actually would happen when you sent this in?
SCOTT PETERSON: Well, all they told me is the case would be closed, to go in since they had my signature at a certain time.
TDPRS ATTORNEY: So someone at an office in Austin told you by having a role removal, you were going to have your entire CPS case closed?
SCOTT PETERSON: Yes, ma'am.
TDPRS ATTORNEY: Okay. Did you understand that that now was incorrect?
SCOTT PETERSON: Well, this is what I was told.
But the parents were unrepresented until much later. And they made no motion to have S.A.P. returned to them after they received these letters. In fact, it was not until just before trial, when they, through their court-appointed attorneys, moved to dismiss this case based on the letters. We recognize that the trial court had no obligation to appoint attorneys to represent the parents prior to the Department's filing a petition to terminate their rights. TEX. FAM.CODE ANN. § 107.013 (Vernon 2004). But we note that both TDPRS which, like the trial court, was sufficiently familiar with the parents' financial situations to know that neither could afford to hire private counseland S.A.P. were represented by counsel at each and every hearing in this case. We cannot say from the record if it was the parents' reliance on the letters, their lack of legal counsel during more than twelve months between receipt of the letters and the filing of the termination petition, or some other reason that led to their failure to attempt to have S.A.P. returned based on the apparent exoneration in the letters. But in the end, they did assert that position.
We find detrimental reliance in the fact that both Scott and Rebecca cooperated with the Department instead of opposing its actions based on the letters. Because we believe that Scott and Rebecca have satisfied the elements of equitable estoppel, we conclude that the Department should have been estopped to bring this proceeding. We sustain this issue.

CONCLUSION
Because the estoppel issue is dispositive of the case, we do not consider their other issues, and we reverse the judgment as to both parents and remand the cause for further proceedings consistent with this opinion.
Chief Justice GRAY filed a dissenting opinion.
TOM GRAY, C.J., dissenting.
This is another case in which this court creates and applies an artificial and unnecessary distinction between civil cases generally and a case involving termination of parental rights. The court's earlier efforts to make such a distinction were rejected. In the Interest of B.L.D., 113 S.W.3d 340 (Tex.2003); In re A.V., 113 S.W.3d 355 *172 (Tex.2003); In the Interest of A.F., 113 S.W.3d 363 (Tex.2003); In the Interest of K.N.R., 113 S.W.3d 365 (Tex.2003); In the Interest of J.F.C., 96 S.W.3d 256 (Tex. 2002). In doing this not only do we err, but we also do a disservice to the bench and bar by creating uncertainty in the law. Further, we do a disservice to this child who is entitled to stability at the most critical time of its development.
In this case the majority uses equitable estoppel as a basis to hold that the suit to terminate the parental rights of Rebecca and Jay should not have been allowed to proceed. In the words of the court: "Because we believe that Scott and Rebecca have satisfied the elements of equitable estoppel, we conclude that the Department should have been estopped to bring this proceeding." In the Interest of S.A.P., No. 10-02-00345-CV, slip op. at * 11, 135 S.W.3d 165, 171 (Tex.App.-Waco March 17, 2004, no pet. h.). There is a lot that the reader should know about this statement that is not immediately evident. Before it is accepted at face value, the discerning reader should want to understand the procedural posture by which this issue was presented to the trial court, thus preserving it for our review, and how it was presented and argued. Also, the procedure and relevant facts, which would allow other litigants to bring themselves within this invincible defense, should be of interest to all litigants in Texas courts.
There are many issues presented in this appeal that should be discussed and are not. But after discussing how the issue decided by the majority was not preserved, I will comment only generally about the application of estoppel to this case and discuss the evidence on only one element of estoppel. I will leave the remainder of the issues for another day, hopefully on remand from the Texas Supreme Court.
Let us begin with the obvious: the manner in which this issue was brought to the trial court's attention, and whether the issue was preserved for our review. Rebecca and Jay both raised the issue in a motion for summary judgment. They both argued that, because of the letter and their response to it, they were each entitled to a judgment denying the termination of their parental rights. The motions were both denied.
The general issue of the effect of the letter and response was also raised in the equivalent of a motion to suppress the evidence which was made orally at the end of the summary judgment hearing. This motion was denied as untimely.
Finally, the issue was raised in a motion in limine. The motion in limine was granted.
Ultimately, the evidence about the prior conduct of Jay regarding the sexual abuse of his other children was introduced, and the evidence that Rebecca had previously had her parental rights terminated regarding other children was also introduced.
In truth, estoppel was only loosely raised in the summary judgment motions. The elements of estoppel were not addressed in any of the motions or related arguments.
The denial of a motion for summary judgment does not preserve the presentation of any issue for appellate review. See Ackermann v. Vordenbaum, 403 S.W.2d 362, 365 (Tex.1966); UPS v. Tasdemiroglu, 25 S.W.3d 914, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd); Libhart v. Copeland, 949 S.W.2d 783, 796 (Tex. App.-Waco 1997, no pet.). There is no civil law equivalent to a motion to suppress; and the denial of the motion, at most, would only be an issue related to the admissibility of evidence and the collateral consequences thereof. The majority is *173 not, as such, ruling on the admissibility of the evidence. So the motion to suppress does not preserve the issue they are deciding. We know that the motion in limine cannot preserve any issue regarding evidence, much less an entire defensive theory. So I can find no manner in which the issue of collateral estoppel was preserved for our review.
Additionally, and even more troubling, is the failure to review this issue under the concept of defective pleadings and potential jury charge error. It is horn book law that a defensive theory, like collateral estoppel, must be raised by a pleading before it becomes an issue for trial. Neither Rebecca or Jay raised the theory as an affirmative defense in an answer. The only answer filed by either appellant was a general denial. No affirmative defenses of any type were raised. Accordingly, there was no pleading alleging equitable estoppel as required before it can become a defensive issue in the trial. TEX. R. CIV. P. 94.
Further, both appellants requested a jury trial. And even if it could be said that the defense of equitable estoppel was tried by consent, a theory that no one has argued, it is necessary to obtain a jury finding before a verdict would support a judgment on this basis. The charge to the jury had no question or instruction regarding equitable estoppel. Equitable estoppel is an affirmative defense. TEX. R. CIV. P. 94. As an affirmative defense, Rebecca and Jay, as the defendants, had the burden of proof. As the party with the burden of proof on the theory, it was incumbent upon them to request that the issues necessary to support the theory be submitted in substantially correct wording. TEX. R. CIV. P. 278 ("... a party shall not be entitled to any submission of any question raised only by a general denial and not raised by affirmative written pleading by that party...."). Because neither appellant requested the submission of a question about equitable estoppel, in any wording much less substantially correct wording, the issue is simply not preserved for our review. TEX. R. CIV. P. 278 ("...Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; provided, however, that objection to such failure shall suffice in such respect if the question is one relied upon by the opposing party.").
So, based upon the foregoing, I am not sure what theories would have to be cobbled together for the Court to be able to hold that equitable estoppel is a theory which was preserved and upon which we could reverse this judgment. And the cobbler has not favored the reader with any explanation of how the issue was preserved.
So what is all this wailing and gnashing of teeth about?: A letter received by each appellant regarding their role in an investigation regarding abuse and neglect of a child and their responses to it. Because the letter and response are so important, I will set out the full text of each. The same letter was received by Rebecca and Jay. The letter states:
6/21/2001
RE: Williams, Rebecca L
Dear [Jay Peterson] [Rebecca Williams]: Child Protective Services has completed an investigation based on a report dated 6/8/2001 that you were responsible for abuse or neglect of one or more children in the above named case. Agency staff has concluded that you did not have a role in the alleged abuse or neglect.
We will be offering services to your family to remedy any other problems identified during the investigation. *174 Because all allegations involving you as an alleged perpetrator have been ruled out, you have the right to request that we remove information about your alleged role from our records.
If you decide to make this request, the attached form must be submitted within 45 calendar days after the mailing date of this notice or your request will be denied. Please read the form carefully for more information about this procedure. If your minor child was the alleged perpetrator in this investigation, you may make this request on behalf of your minor child.
You have the right to request a copy of the investigation information upon which the findings are based. The name of the reporter will be removed. Copies are available at established TDPRS rates. Your request for a copy of the written information may be denied if
* a civil or criminal lawsuit involving TDPRS is pending and the attorney representing TDPRS has determined that the information may be withheld, or
* release would jeopardize an ongoing criminal investigation.
You also may have the right to review any relevant videotapes or audiotapes.
I would like to take this opportunity to thank you for your understanding and cooperation during this investigation. You may contact me at (254) 756-5571 during regular work hours if you wish to discuss this letter.
Sincerely,
/[initials] FMZ/
The enclosed document, which was returned by Rebecca and Jay was as follows:

REQUEST FOR REMOVAL OF ROLE INFORMATION FROM CHILD PRTECTIVE SERVICE CASE
This completed request form must be mailed to the Texas Department of Protective and Regulatory Services promptly, within forty-five (45) days after the mailing date of the enclosed notice letter, or your request will be denied....
* * *
IMPORTANT INFORMATION ABOUT YOUR RIGHTS
Once the role information involving you is removed from our records, THIS INFORMATION WILL BE PERMNENTLY DESTROYED AND WILL NOT BE AVAILABLE TO USE FOR ANY PURPOSE WHATSOEVER. Before deciding whether or not to request that the role information involving you be removed from the department's records, you should consider the following:
1. Once the information is removed, the department's official business record will no longer reflect that you were alleged to have committed abuse or neglect in this investigation.
2. Once the information is removed, the department's official business record will no longer reflect that you were found NOT to have committed abuse or neglect. We will also not have a complete record of the investigation information which led us to conclude that you did not commit abuse or neglect.
3. If for, any reason, you wish to prove that someone falsely reported you for abuse or neglect, our records will not reflect that the report against you was made once this information is removed.
Because this choice may have important consequences, you may wish to consult a private attorney for legal advice as to whether or not you should request that this information be removed.
I have read the forgoing information about my rights and have made the decision *175 to request that all information about my role as an alleged perpetrator in this investigation be removed from the department's records.
/s/ [jsp 7/6/01][rlw 8/6/01][1]
--- ------------------------------
Signature of person Date signed
requesting removal of
role information
Now let us shift our attention to some problems which underlie applying the theory of equitable estoppel to the argument that TDPRS should be estopped from introduction of evidence of all prior abuse or neglect of any child, ever, based upon the contents of the letter and response.
Absent extraordinary circumstances, estoppel does not apply as a defense against a governmental entity. See State v. Durham, 860 S.W.2d 63, 67 (Tex.1993).
Even if estoppel could apply in a termination-of-parental-rights suit brought by the State, it would not apply in this situation. I will not attempt to discuss the myriad of reasons why equitable estoppel should not apply in this particular proceeding, based upon this type form letter, or based upon the particular contents thereof. But I must ask the readers to make some observations and apply some common sense.
I ask the reader to carefully review the statements in the letter and response/request and see if they can determine what representations were made by TDPRS that should be elevated over being able to use evidence that existed prior to the time of the letter, or evidence about events that happened after the letter, in a termination proceeding occurring after the letter was delivered and the request was made. While doing this the reader must bear in mind that the letter is being used by this court as a legal basis to bar prosecution of a suit for termination upon any theory, not just abuse or neglect of S.A.P. Of course abuse or neglect is the only issue discussed in the letter.
The majority concludes that "We find detrimental reliance in the fact that both Scott and Rebecca cooperated with the department instead of opposing its actions based on the letters." But the letter did not exonerate them from all issues regarding their care of S.A.P. Specifically the letter told each of them: "We will be offering services to your family to remedy any other problems identified during the investigation." The majority tries to link the letter to other events involving other children, but the letter says: "...that you were responsible for abuse or neglect of one or more children in the above named case." It is undisputed that the referral, investigation, and case all involved only one child, S.A.P. And the majority has brought all prior conduct within the "abuse or neglect" terminology regardless of when it occurred, and to whom. But the letter says: "Agency staff has concluded that you did not have a role in the alleged abuse or neglect." This must be limited to the specific abuse or neglect that was the *176 basis of the referral; and, at best, that was a highly controverted issue.
Also a critical observation is that the letter only refers to removal from the file of information, and does not refer to, or agree to destroy, evidence or not use evidence that existed outside the file, or that was contained in the file if it did not involve their role as a perpetrator of the abuse or neglect.
The letter made no reference of any investigation into other circumstances, beyond the allegations contained in the June 8, 2001 referral. And the letter certainly did not state that evidence discovered as a result of the investigation could never be used in any termination proceeding. Just because information about their alleged role in the abuse or neglect was going to be removed from the referral investigation file does not mean that all evidence which existed outside the file would not be utilized in a subsequent termination proceeding. And presumably, TDPRS would not create evidence from whole cloth. Thus, there would be no evidence that existed only in the file which resulted from the investigation. Surely no common sense reading of the letter and the request could be construed to mean that all evidence of abuse or neglect, particularly of the abuse or neglect of other children, which existed outside the file would be destroyed.
Further, whether the abuse or neglect mentioned in the letter had allegedly been directly inflicted upon S.A.P. or was some generalized conduct directed against S.A.P. was answered in the negative by the jury in response to the first ground for termination. The first ground for termination, which was answered "no" as to each appellant, is:
[d]o you find by clear and convincing evidence that the ... [parent] has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the emotional or physical well-being of the child?
The jury had been presented with the letter as part of the evidence. Their answer would seem to have been greatly affected by the contents of the letter, to say nothing of the fact that S.A.P. had been in the possession of TDPRS virtually since birth. So unless the jury had determined that because the parents left the child with TDPRS without seeking return of the child to them was grounds for termination under this provision, a possibility that I am not willing to rule out entirely, the jury almost certainly was going to answer "no" to this question. And they did answer "no."
But there were other theories, upon which termination could be based, that the jury determined against each parent. As to the mother, the jury was asked:
Do you find by clear and convincing evidence that the mother, Rebecca (Williams) Peterson, has had her parentchild relationship terminated with respect to another child based on a finding that the mother's conduct was in violation of § 161.001(1)(D) or (E), Texas Family Code, or substantially equivalent provisions of the law of another state?
As to the father, the jury was asked:
Do you find by clear and convincing evidence that the father, JAY SCOTT PETERSON, has failed to comply with the provisions of a court order that specifically established the actions necessary for JAY SCOTT PETERSON to obtain the return of the child, who has been in the temporary managing conservatorship of the Department of Protective and Regulatory Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child?
*177 These are valid theories which the majority has not determined were not supported by the evidence. And the law is wellsettled that termination needs only one basis to be upheld. The court has enveloped all grounds in its analysis under its determination that TDPRS was estopped from bringing any theory of termination based upon the letter and the subsequent request.
But as to the mother, the termination could be properly based upon events that occurred prior to the referral and which consisted of evidence unrelated to any conduct of the mother in reliance on the letter. Quite simply, there could have been no justifiable reliance on the letter if her parental rights were terminated based on events that occurred prior to the letter.
And as to the father, the termination could be properly based upon events that happened after, but independent of the grounds investigated by the referral leading to the letter, and thus was not information that, under the court's theory, should have been purged from the file never to be seen or used again. In fact, because these events occurred after the letter, it is not information that could have been purged from the file. It was information about events that did not even exist at the date of the letter.
Based upon the foregoing, and the jury's answer to these specific questions, the specific issue as to estoppel that I will address is what appears to me to be a total lack of evidence to support one elementdetrimental reliance. In this case, equitable estoppel would require detrimental reliance by the parents upon the representations made in the letter. What is lacking from this record, other than preservation of an error or a jury determination that TDPRS should be barred by estoppel, is evidence that either parent took any action after the letter based upon the representations in the letter that was detrimental to them in any way. Without detrimental reliance, there is no equitable estoppel. There is no basis for the court to go out on its own and raise the theory and further hold as a matter of law that it was established. But that is the judgement of the majority, and it causes me to have to dissent.
There are many issues other than estoppel that have been argued by the parties. Some of the other issues could, in theory, result in a rendition in favor of Rebecca or Jay, or could result in a remand for a new trial if it is determined the trial court erred and the error was not harmless.[2] In this situation, an appellate purist would say that, because I disagree with the majority on the issue on which they have decided the result, I should conduct my own analysis of these other issues raised by the appellants to determine whether, in the final analysis, I agree or disagree with the result. I agree with the purist. But the reality of the situation is that the judgment already has two votes and an indepth analysis will not change that judgment. *178 It will only serve to delay the ultimate disposition of this appeal. In this instance, I will yield to the pressure of a more timely response, as opposed to conducting a separate, but futile, analysis.
Accordingly, I respectfully dissent.
NOTES
[*] This case was submitted with former Chief Justice Davis on the panel, but he resigned effective August 4, 2003. Justice Reyna, who took office on January 5, 2004, participated in the decision.
[1] Texas Family Code section 161.001 provides:

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:
(1) that the parent has:
...
(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child....
[2] The Department's attorney, in arguing against the motion in limine, said "... every single question that we ask will have to be limineed before a jury."
[3] There was some testimony at a pretrial hearing on November 18, 2002, that the reason for the initial removal was risk of sexual abuse; this was later corrected by the witness who said the initial reason was neglectful supervision. The Notice of Emergency Removal, executed on June 11, 2001, states Risk of Abandonment as the reason for S.A.P.'s removal.
[4] Rebecca offered similar testimony.
[1] I must briefly mention in passing that I believe there is at least an issue regarding the timeliness of Rebecca's response. The initials and dates above the "Date signed" line indicate the dates that Jay and Rebecca indicate on the form that it was signed. Rebecca indicated that she signed the form on August 6, 2001. As clearly stated in the transmittal letter and the form, the form must be returned "within 45 days" of the date on the transmittal letter. The date of the transmittal letter was June 21, 2001. Rebecca signed her form after 45 days and is therefore not entitled to the relief she seeks in any circumstance. I note that the 45th day fell an a Sunday. But the letter and the administrative code specifies "within 45 days." Because this was not a pleading or other court imposed deadline, there is no reason to apply the rule of civil procedure regarding extending the filing period to the next business day if the deadline falls on a Sunday.
[2] As to the relief granted, the court should be clear in what they consider further proceedings consistent with the court's opinion. Because we must review the issues which afford the appellant the greatest relief first, Bradleys' Elec. v. Cigna Lloyds Ins. Co., 995 S.W.2d 675, 677 (Tex.1999), and because there were issues of legal sufficiency raised, the only logical construction of the court's opinion and judgment is that the judgment of termination is reversed and must, on remand be rendered in favor of Rebecca and Jay. Thus, the holding of this court is that there was no theory raised at trial upon which the parental right's of Rebecca and Jay could be properly terminated. The court should be clear. If that is their holding, it should be so stated; and there is no reason that the court should remand the case. Just render the decision they believe the trial court should have rendered and be done with it.