Jose **PENA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–03–00109–CR.

Court of Appeals of Texas, Waco.

April 27, 2005.

---

Frank Blazek, Smither, Martin & Henderson, Huntsville, for appellant.

Ray Montgomery, Leon County Dist. Atty., Centerville, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Jose Pena was charged with possession of marihuana. Before trial, Pena requested an independent analysis of the evidence. Thereafter, it was discovered that the alleged marihuana had been destroyed and all records documenting the testing of the evidence were lost excepting a lab report. The trial court denied Pena's motion to suppress the lab report, and Pena was convicted.

Because we conclude that the due course clause of the Texas Constitution provides a greater level of protection with respect to lost or destroyed evidence than does the United States Constitution, we will reverse and remand, even though the record contains no evidence of bad faith on the part of the law enforcement officials involved in Pena's case.

Pena argues that (1) the trial court erred by denying his motion to suppress the lab report; (2) the trial court erred by denying his motion for new trial based upon his counsel's failure to assert a speedy trial claim; (3) his trial counsel provided ineffective assistance by failing to assert a speedy trial claim; (4) the trial court erred by denying his motion for new trial based upon his counsel's failure to request a jury instruction on mistake of fact; (5) his trial counsel provided ineffective assistance by failing to request a jury instruction on mistake of fact; and (6) he was denied due process because the State failed to provide an accurate copy of a videotape depicting the circumstances of his stop and arrest.

## Destruction of Evidence and Missing Files

Pena argues in his first issue that he was denied due process and due course of law because the trial court erred by denying his motion to suppress.

In September 1998, State Trooper Mike Asby stopped Pena for a traffic violation. When Asby approached the vehicle, he smelled the odor of raw marihuana. Asby looked inside Pena's van and saw freshly cut marihuana covering the entire cargo area. Though Pena repeatedly told Asby that the plant material was not marihuana, Asby arrested Pena. In the patrol car, Pena again claimed that the plants were not marihuana and asked Asby to make sure that the plants were tested for marihuana in a lab. Asby took the plants to Charles Mott, who tested them and reported in February 1999 that the plant materi-

al yielded 23.46 pounds of usable marihuana.

In March 2002, Pena filed a motion to independently examine the plant material, which the trial court granted. Thereafter it was discovered that the plant material and all records relating to the material had been destroyed. All that remained was a lab report stating that the plant material was marihuana, signed by Mott, and sent from the lab to Asby.

Subsequently, Pena filed a motion to suppress Mott's report. At a pre-trial hearing on Pena's motion, Mott testified that he personally tested the material and found that it was 23.46 pounds of marihuana. Yet, he was unable to recall the material's weight from memory, how the material was contained, or how he took samples for testing. He also could not recall when it was tested.

Based upon a computer entry, Mott testified that he received a notice to dispose of the evidence in February of 2000 and that it was entirely destroyed in March of that year. However, Mott conceded that he did not know who sent the notice and stated that not only was the plant material destroyed, but the entire file containing the notice to destroy, the original worksheet, reports, letters, and submission forms was lost. He admitted that this had never occurred before or since, but he attributed the cause of the missing files to his lab's recent move to a new building.

The trial court took judicial notice of the fact that there was no destruction order from the trial court in the clerk's file. The district attorney, Ray Montgomery, testified that he did not order or sign an order for the destruction of the evidence. Asby, the only other person that Mott believed could have requested the destruction, testified that he did not remember signing such an order.

Pena argued to the trial court that the report, and all testimony concerning the report, should be suppressed because the destruction of the marihuana violated his due process rights guaranteed by the United States and Texas Constitutions. The trial court denied Pena's motion.

### The *Youngblood* Standard

█ The loss or destruction of exculpatory evidence can deny a criminal defendant due process of law under the Fourteenth Amendment. U.S. Const. amend. XIV. Therefore, the State has a duty to preserve exculpatory evidence. *California v. Trombetta*, 467 U.S. 479, 488–89, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984); *Jackson v. State*, 50 S.W.3d 579, 588–589 (Tex.App.-Fort Worth 2001, pet. ref'd). However, this duty is limited to evidence that (1) possesses an exculpatory value that was apparent before the evidence was destroyed and (2) is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Trombetta*, 467 U.S. at 488–89, 104 S.Ct. at 2534; *McDonald v. State*, 863 S.W.2d 541, 543 (Tex.App.-Houston [1st Dist.] 1993, no pet.).

Once the duty to preserve is established, we then turn to the standard articulated by the United States Supreme Court in *Arizona v. Youngblood*. 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). In 1985, a ten year old boy was abducted and molested. *Id.* at 52, 109 S.Ct. at 334. Swabs of blood and semen samples were preserved, but the boy's clothing which also contained samples was not. *Id.* at 53, 109 S.Ct. at 335. The boy identified Youngblood as his attacker, and he was arrested. *Id.* The tests on the preserved samples proved inconclusive, and Youngblood was convicted on the boy's identification alone. *Id.* at 54, 109 S.Ct. at 335. Youngblood argued to the Arizona Court

of Appeals that he was denied due process because the police did not preserve the evidence on the boy's clothing. *Id.* The Court agreed, reversed his conviction, and the Arizona Supreme Court denied the State's petition. *Id.* at 55, 109 S.Ct. at 336.

The United States Supreme Court reversed the Arizona Court of Appeals, holding that a defendant must show bad faith on the part of the police in order for a court to find that the destruction of potentially useful evidence is a denial of due process. *Id.* at 58, 109 S.Ct. at 337. Following *Brady,* the Court reasoned that if the destroyed evidence is material and exculpatory, then whether the evidence was destroyed in good or bad faith is irrelevant. *Id.* at 57, 109 S.Ct. at 337 (citing *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963)). However, if the destroyed · evidence is merely "potentially useful," the accused must show that the State acted in bad faith when it failed to preserve the evidence in order to show a violation of due process of law. *Id.* at 58, 109 S.Ct. at 337; *Jackson,* 50 S.W.3d at 588–589. Furthermore, if evidence is destroyed in good faith and in accord with normal police procedures, there is no due process violation. *See Trombetta,* 467 U.S. at 488, 104 S.Ct. at 2533.

Justice Stevens in his concurring opinion stated that while he agreed that Youngblood was not denied due process, he disagreed with the rule of law set forth by the majority as too broad. *Youngblood,* 488 U.S. at 60–61, 109 S.Ct. at 339. "In· my opinion, there may well be cases in which the defendant is unable to prove that the State acted in bad faith, but in which the loss or destruction of evidence is nonetheless so critical to the defense as to make a criminal trial fundamentally· unfair." *Id.* Justice Stevens's concerns about the fun-

damental fairness of the proceedings was soon echoed by states choosing to reject the *Youngblood* standard when interpreting their respective due process clauses. Likewise, we will decide whether the *Youngblood* analysis applies to the due course clause of the Texas Constitution.

### The Due Course Clause of the Texas Constitution

■ The Texas constitution must be interpreted independently of the U.S. Constitution. *Hulit v. State,* 982 S.W.2d 431, 437 (Tex.Crim.App.1998). In doing so, it may be found that the Texas Constitution's protections are greater, lesser, or the same as those offered by the federal constitution. *See Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App.1991) (stating Texas constitution is not dependent on federal constitution for purposes of search and seizure protections); *Sanchez v. State,* 707 S.W.2d 575, 580 (Tex.Crim.App.1986) (construing the Texas right against self-incrimination more broadly than .the correlative federal provision, but restricting this holding to the specific issues before the court). Indeed, "the language of the Texas [due course] constitutional provision is different from, and arguably significantly broader than, the language of the corresponding federal provisions." *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 293, 102 S.Ct. 1070, 1077, 71 L.Ed.2d 152 (1982); *see contra, Univ. of Tex. Med. Sch. v. Than,* 901 S.W.2d 926, 929 (Tex.1995).

In interpreting the protections of the Texas due course clause when the State loses or destroys evidence, we look at other jurisdictions that have interpreted their state constitutions more broadly than its federal counterpart.

### The Rejection of *Youngblood* by Other Jurisdictions

Shortly after the *Youngblood* decision, a number of states rejected applying the

*Youngblood* standard.[1] One of the many reasons promulgated for a rejection of *Youngblood* is the practical impossibility of proving bad faith on the part of the police. While bad faith has not been specifically defined by the Supreme Court, many states have used the dicta in *Trombetta* in formulating a working definition. Bad faith is found when an officer demonstrates "official animus" towards the accused, or "a conscious effort to suppress exculpatory evidence." *Rodriguez v. State*, No. 03–97–00180–CR, 1998 WL 303873, 1998 Tex.App. Lexis 3602 at *10 (Tex.App.-Austin June 11, 1998, no pet.) (not designated for publication) (citing *Trombetta*, 467 U.S. at 488, 104 S.Ct. at 2533). Given this standard, it is clear why the states rejecting *Youngblood* despaired in ever finding a due process violation. "Short of an admission by the police, it is unlikely that a defendant would ever be able to make the necessary showing to establish the required elements for proving bad faith." *Lolly v. State*, 611 A.2d 956, 960 (Del.1992); *State v. Ferguson*, 2 S.W.3d 912, 917 (Tenn.1999) (finding that proving bad faith is extremely difficult).

Also, because of the difficulty in proving bad faith, some states found that *Youngblood* has the immediate result of being ineffective in preventing the intentional destruction of useful evidence, and thus not only loses its deterrent effect, but encourages the designed loss of evidence. Alaska has found that the *Youngblood* standard could give the police an incentive to destroy potentially useful evidence in order to bolster the State's case at trial. "The *Youngblood* decision could have the unfortunate effect of encouraging the destruction of evidence to the extent that evidence destroyed becomes merely potentially useful since its contents would be unprovable." *Thorne v. Dept. of Public Safety*, 774 P.2d 1326, 1331, n. 9 (Alaska 1989).

Another reason touted by the states rejecting *Youngblood* is that the requirement of bad faith operates as a litmus test mandating no due process violation even when serious questions exist concerning the fundamental fairness of the trial. *Youngblood* "permits no consideration of the materiality of the missing evidence, or its effect on the defendant's case.... [It] substantially increases the defendant's burden, while reducing the prosecution's burden at the expense of the defendant's fundamental right to a fair trial." *Ferguson*, 2 S.W.3d at 916–17.

Even if a defendant's case approaches bad faith, such as adequate proof of gross negligence or reckless disregard, a due process violation cannot be found. *Delga-*

---

1. *Ex Parte Gingo*, 605 So.2d 1237, 1241 (Ala. 1992) (adopting *Youngblood* with a "Stevens" exception: no showing of bad faith required if the loss or destruction of the evidence is so critical to the defense as to make a criminal trial fundamentally unfair); *Thorne v. Dept. of Public Safety*, 774 P.2d 1326, 1330–31 (Alaska 1989) (balancing test); *State v. Morales*, 232 Conn. 707, 657 A.2d 585, 591–92 (1995) (balancing test); *Lolly v. State*, 611 A.2d 956, 960 (Del.1992) (three-part balancing test); *State v. Matafeo*, 71 Haw. 183, 787 P.2d 671, 673 (1990) (adopting *Youngblood* with a "Stevens" exception); *Williams v. State*, 118 Nev. 536, 50 P.3d 1116, 1126 (2002) (defendant must prove bad faith or undue prejudice); *State v. Chouinard*, 96 N.M. 658, 634 P.2d 680, 683 (1981) (three-part test); *State v. Barnett*, 543 N.W.2d 774, 777–778 (N.D.1996) (adopting *Youngblood* with a "Stevens" exception and an exception if there is a "systemic disregard" of the State's duty to preserve evidence); 156 Or.App. 245, 966 P.2d 1200, 1204 (1998); *State v. Cheeseboro*, 346 S.C. 526, 552 S.E.2d 300, 307 (2001) (adopting *Youngblood* with an exception if the defendant cannot obtain other evidence of comparable value); *State v. Ferguson*, 2 S.W.3d 912, 917 (Tenn.1999) (adopting the "Delaware" test); *State v. Gibney*, 175 Vt. 180, 825 A.2d 32, 42–43 (2003) (adopting the "Delaware" test); *State v. Osakalumi*, 194 W.Va. 758, 461 S.E.2d 504, 512 (1999) (adopting the "Delaware" test).

dillo v. State, No. 08–01–00455–CR, 2004 WL 1375404, 2004 Tex.App. LEXIS 5455, *11 (Tex.App.-El Paso, June 17, 2004, pet. ref'd) (not designated for publication) (finding that police actions were "clearly negligent," but no bad faith); Hebert v. State, 836 S.W.2d 252, 254 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd) (holding that proof of negligence does not amount to bad faith).

The Delaware Supreme Court found that such a scenario would place the court in a difficult position.

> The court must either find bad faith and dismiss the charges, despite facts which support only a finding of gross negligence, or find no bad faith and deny the defendant the benefit of a favorable inference, despite the loss of material evidence due to the State's negligence. In such a situation, the court is left with an all or nothing proposition leading to two equally unsatisfactory results.

Lolly, 611 A.2d at 960.

It was this reasoning that led the Delaware Supreme Court to employ a balancing test of certain factors, the implementation of which both assures the preservation of convictions for the State and addresses those borderline situations otherwise without a remedy. See id. In agreeing with its sister state, Vermont held:

> Youngblood is both too broad and too narrow. It is too broad because it would require the imposition of sanctions even though a defendant has demonstrated no prejudice from the lost evidence. It is too narrow because it limits due process violations to only those cases in which a defendant can demonstrate bad faith, even though the negligent loss of evidence may critically prejudice a defendant.[2]

State v. Gibney, 175 Vt. 180, 825 A.2d 32, 42–43 (2003).

We find the reasoning of these jurisdictions persuasive. Our research has found only two cases in Texas finding bad faith. Ex parte Brandley, 781 S.W.2d 886, 894 (Tex.Crim.App.1989) (finding the cumulative effect of the investigative procedure deprived the defendant of due process of law); Robles v. State, No. 13–98–154–CR, 1999 WL 812295, 1999 Tex.App. LEXIS 7566 at ——, 15–17 (Tex.App.-Corpus Christi, Oct.7, 1999, no pet.) (not designated for publication) (finding bad faith on the part of the prosecution in withholding potentially useful evidence).

Other scholars researching federal case law have also found few post-Youngblood cases finding bad faith. See Elizabeth A. Bawden, Here Today, Gone Tomorrow— Three Common Mistakes Courts Make When Police Lose or Destroy Evidence with Apparent Exculpatory Value, 48 Clev. St. L.Rev. 335, 349 n. 71, (2002) (citing U.S. v. Bohl, 25 F.3d 904, 911–13 (10th Cir.1994) (finding bad faith because the facts and evidence in the case, "in the absence of any innocent explanation offered by the government, [gave] rise to a logical conclusion of bad faith"); U.S. v. Cooper, 983 F.2d 928, 931 (9th Cir.1993) (finding bad faith because the government "[left] unchallenged the district court's conclusion that the police acted in bad faith by allowing the [evidence] to be destroyed while assuring [the defendant] and

---

**2.** Nothing demonstrates this point more than the case of Mr. Youngblood himself. After the Supreme Court denied Youngblood the relief he sought, he waited seventeen years until his request was granted to have the unpreserved clothing of the abducted boy tested using new serological techniques. The tests proved that Youngblood was not the assailant, and he was set free. See Barbara Whitaker, DNA Frees Inmate Years After Justices Reject Plea, N.Y. Times A12 (Aug. 11, 2000) (quoting forensics scientist Dr. Edward Blake, "We now have before us a flawed legal precedent that stands on the shoulders of an innocent man....").

his attorney that it was being held as evidence")).

Also, the recent findings of negligence in the handling of evidence by crime labs across the country, resulting in hesitation and concern for those individuals whose convictions were connected with the work of those labs, demands that courts exercise caution when analyzing lost or destroyed evidence. *See* Bennett L. Gershman, *Forensics Symposium: The Use and Misuse of Forensic Evidence; Misuse of Scientific Evidence by Prosecutors,* 28 Okla. City U.L.Rev. 17 (2003) (detailing the problems uncovered in the nation's crime labs).

In this regard, the problems in several Texas crime labs cannot be ignored. Sylvia Moreno, *Police Lab's Troubles Grow, Problems in Houston Lead to Moratorium on Executions,* Washington Post A3 (October 2, 2004); Deanna Boyd, *Experts Cite Problems with Police Crime Lab,* Fort Worth Star Telegram 1 (April 18, 2003). In recounting problems with crime labs in Phoenix, Florida, Kansas, New York, and Houston, the Baton Rouge Advocate quoted Ken Melson, U.S. attorney in eastern Virginia, as stating, "No one wants a Houston in their state." Robert Tanner, *Crime Lab Problems Fuel Call for More Regulation,* The Baton Rouge Advocate A1 (July 7, 2003). It is also clear that the negligence found in crime labs in Texas has resulted in the incarceration of innocent citizens and convictions based on faulty evidence. *See* Andrew Tilghman, *DA Says Flawed Labwork Led to Rape Conviction,* Houston Chronicle (2004).[3] What is more, it is entirely possible that the *Youngblood* standard may have contributed to the negligent actions of these crime labs. *See* Matthew H. Lembke, *The Role of Police Culpability in Leon and Youngblood,* 76 Va. L.Rev. 1213, 1240 (1990) ("The *Youngblood* test provides no

incentive for police departments to adopt standard operating procedures that ensure the proper collection and preservation of evidence.").

Whether in cases involving contraband or those containing DNA evidence, it is clear that science is becoming increasingly capable of answering life or death questions with the alacrity of Caesar's thumb. As a result, it is imperative that we consider the loss or destruction of evidence carefully. Therefore, because of the increasing reliance of law enforcement upon the advances of science, and because of the reasons articulated by the jurisdictions cited above, we join our sister states in rejecting *Youngblood* as persuasive when interpreting the due course clause of the Texas Constitution.

## The Balancing Test and Analysis

■ Today, we hold that under the due course clause of the Texas Constitution the State has a duty to preserve evidence that has apparent exculpatory value, encompassing both exculpatory evidence and evidence that is potentially useful to the defense. In either case, the evidence must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *See Trombetta,* 467 U.S. at 489, 104 S.Ct. at 2534; *see also Ill. v. Fisher,* 540 U.S. 544, 548, 124 S.Ct. 1200, 1202, 157 L.Ed.2d 1060 (2004). The loss or destruction of such evidence results in a breach of this duty.

■ In the case of the loss or destruction of exculpatory evidence, due process requires that the consequences of such a breach be a dismissal of the State's case. *See Brady,* 373 U.S. at 87, 83 S.Ct. at 1196. Conversely, the loss of potentially useful

**3.** http://www.chron.com/cs/CDA/ssisto-     ry.mpl/special/crimelab/ 2823261.

evidence requires a consideration of several factors to determine what consequences, if any, should flow from such a breach. *Ferguson,* 2 S.W.3d at 917.

Keeping in mind the central objective of protecting the defendant's right to a fundamentally fair trial, a trial court should consider: (1) the degree of negligence involved; (2) the significance of the destroyed evidence considered in light of the probative value and reliability of secondary evidence that remains available; and (3) the sufficiency of the other evidence used at trial to support the conviction. *Id.; Hammond v. State,* 569 A.2d 81, 86 (Del.1989). If after considering these factors, the trial court concludes that a trial without the missing evidence would be fundamentally unfair, the court may then determine the appropriate measures needed to protect the defendants rights. For example, the trial court could instruct the jury that they may infer that the missing evidence would have been favorable to the defense,[4] or dismiss the charges. *Ferguson,* 2 S.W.3d at 917 (finding either dismissal or a jury instruction appropriate).

This test adequately balances the defendant's due course concerns with the State's interests because the fundamental fairness of the proceedings is evaluated in the context of the entire record and the nature of

the State's conduct is balanced against the degree of prejudice to the defendant. *Hammond,* 569 A.2d at 87. Further, while the conduct of the State's agents is a relevant consideration, it is not determinative. *Id.* "Equally relevant is a consideration of the importance of the missing evidence, the availability of secondary evidence, and the sufficiency of the other evidence presented at trial." *Id.*

We now examine Pena's case under these parameters. A defendant has an absolute right to an independent chemical analysis of alleged contraband in possession cases. *Terrell v. State,* 521 S.W.2d 618, 619 (Tex.Crim.App.1975). Yet because the plant material was not independently tested, the evidence is merely potentially useful. Nothing more may be said of the missing marihuana than that it could have been subjected to an independent test. *Fisher,* 540 U.S. at 548, 124 S.Ct. at 1202 (finding unpreserved evidence potentially useful because the defense could have subjected it to a fifth test). Also, given the material's complete destruction, it is clear that Pena was unable to obtain comparable evidence by other reasonably available means. *Trombetta,* 467 U.S. at 489, 104 S.Ct. at 2534. Therefore, the State had a duty to preserve the plant material, and as it was not

---

4. The Delaware Supreme Court found this instruction appropriate:

In this case the court has determined that the State failed to collect/preserve certain evidence which is material to the defense. The failure of the State to collect/preserve such evidence entitles the defendant to an inference that if such evidence were available at trial it would be exculpatory. This means that, for purposes of deciding this case, you are to assume that the missing evidence, had it been collected/preserved, would not have incriminated the defendant and would have tended to prove the defendant not guilty. The inference does not

necessarily establish the defendant's innocence, however. If there is other evidence presented which establishes the fact or resolves the issue to which the missing evidence was material, you must weight that evidence along with the inference. Nevertheless, despite the inference concerning the missing evidence, if you conclude after examining all the evidence that the State has proven beyond a reasonable doubt all elements of the offense(s) charged, you would be justified in returning a verdict of guilty.

*Lolly,* 611 A.2d at 961–62 n. 6.

preserved, the State has breached this duty.

We now turn to the consequences of this breach. It is evident from the record that the plant material was not destroyed with the intent to deprive Pena of due course. The destroyed plant material and accompanying missing files were most likely the result of two acts of simple negligence. Mott testified that the files were most likely lost during the lab's relocation, and the plant material was destroyed because a destruction order was sent. Yet it is odd that while the evidence could have been destroyed within the boundaries of police procedure, all persons connected with the evidence possessing the authority to legally order its destruction testified that they did not. This negligence compounded with the lack of acceptance of responsibility in light of Pena's liberty concerns is troubling and borders on gross negligence.

The plant material being the sole cause for Pena's arrest was of paramount significance, and became more so after the files documenting the testing of the material became lost. Consequently, the lab report, exclusively relied upon at trial, is the only evidence recording that the destroyed plant material was tested, and it stands unsupported by documentation and unverified by human memory. Had the plant material not been destroyed, the missing files would have no significance because the material could be tested again. Yet, this is not the case.

Regarding the third factor, the sufficiency of the other evidence, the pictures of the plant material in the van and Asby's testimony might support Pena's conviction.

*See Ward v. State*, 659 S.W.2d 643, 644–45 (Tex.Crim.App.1983) (finding that despite no chemical analysis, officer's testimony that leafy substance was marihuana was sufficient). However the other factors, the significance of the evidence and the amount of negligence involved, weigh heavily in Pena's favor.

Therefore, keeping in mind the fundamental fairness of the proceeding, we find that Pena was denied due course of law under the Texas Constitution. *See State v. Osakalumi*, 194 W.Va. 758, 461 S.E.2d 504, 512 (1995); *Deberry v. State*, 457 A.2d 744, 753 (Del.1983). Accordingly, we sustain Pena's first issue.

## Conclusion

Because Pena's first issue is dispositive of his appeal, we need not address his other issues. Therefore, we reverse the judgment of the trial court for further proceedings consistent with this opinion.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

As the Court of Criminal Appeals is accustomed to by now, the majority has decided to reverse a conviction on a theory not argued by the appellant; that is, that the Texas due course of law provision offers more protection than the federal due process clause. It will serve no useful purpose for me to pontificate on the similarities or distinctions between the due process clause of the United States Constitution and the due course of law provision of the Texas Constitution as my colleagues do.[1] The opinion has the requisite

---

1. I do note, notwithstanding that it arises in a different context, that the due course of law provision of the Texas Constitution and the due process clause of the United States Constitution have been compared in the past and the Texas Supreme Court has consistently

held the two provisions to be equivalent. *See Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 658 (Tex.2004) ("[W]e generally construe the due course clause in the same way as its federal counterpart."); *United States Gov't v. Marks*, 949

two votes to become the law of this district, so I will not delay the disposition of Pena's appeal. *See In the Interest of S.A.P.*, 135 S.W.3d 165, 177. (Tex.App.-Waco 2004) (Gray, C.J., dissenting), *rev'd*, 156 S.W.3d 574 (Tex.2005); *Jacobo v. Binur*, 70 S.W.3d 330, 339–344 (Tex.App.-Waco 2002) (Gray, J., dissenting), *rev'd*, 135 S.W.3d 646 (Tex.2004).

But I must, nevertheless, comment on several things that struck me as I went through the majority's opinion, the briefs, and the record. The majority opinion states that "Pena argues in his first issue that he was denied due process and due course of law because the trial court erred by denying his motion to suppress." Pena did not argue that the court erred in denying his motion to suppress—he argued that the trial court erred in admitting evidence. There is a difference.

Was there a motion to suppress filed? Sort of—it was a canned motion included within various other requests. The whole "motion," in this record, is as follows

> The Defendant requests a hearing outside the jury's presence to determine the admissibility of any physical evidence recovered during the investigation of this cause and which the District Attorney intends to offer as evidence herein, and would request that the Court suppress this evidence if the Court determines that the evidence was obtained

in violation of the United States Constitution or the Texas Constitution.

Did Pena argue the due course of law clause in that motion? Clearly, no. Did he argue any distinction between the United States and Texas Constitutions in that motion? Clearly, no.

Okay, then, was there a hearing and what happened there? Counsel for Pena brought up the motion at a pre-trial hearing, but the trial court decided to carry it with the trial. At that time, at the pre-trial hearing, the trial court still did not know Pena was making an argument under the due course of law provision of the Texas Constitution.

During the trial, when the court decided the qualifications of the expert testifying about the seized marijuana, outside the presence of the jury, Pena brought up additional objections about the admissibility of the testimony about the marijuana. Counsel stated, "Additionally, the objection would be under the due process rights of the accused and due course of law, which would be the Fifth and Sixth and Fourteenth Amendments." Note counsel's specifically referenced amendments are all federal constitutional references. After the trial court next overruled a confrontation clause objection, counsel stated, "I would address the due process rights of the accused and due course of law, additionally, Judge." Note this was not an objection, and so no ruling was made. At

---

S.W.2d 320, 326 (Tex.1997) ("[W]e have traditionally followed contemporary federal due process interpretations of procedural due process issues in applying our state constitutional guarantee of due course of law."); *University of Tex. Medical Sch. v. Than*, 901 S.W.2d 926, 929 (Tex.1995) ("While the Texas Constitution is textually different in that it refers to 'due course' rather than 'due process', we regard these terms as without meaningful distinction."). Even the interpretive commentary from the Texas Constitution views the provisions as the same. TEX. CONST. ANN. art. I,

§ 19 (Vernon 1997) (Interpretive Commentary) at pg 100 ("It has been held by Texas courts that the clause of the Texas Constitution, to the extent that it is identical with the fourteenth amendment, has placed upon the powers of the state legislature the same restrictions as those which have been held to be imposed by the language of that amendment of the Federal Constitution. *Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249 (1887)."). I find no reason to depart from that interpretation.

that point, the parties began questioning the expert who tested and weighed the marijuana.

After the expert's testimony, the trial court noted that "the defendant must show that the prosecution acted in bad faith when it failed to preserve the evidence to show [a] violation of due process or due course of law." Further testimony was taken, but no arguments were made. No discussion was had of the standard under the due course of law provision and whether it was any more stringent than the due process provision. The trial court ruled that the lost evidence was material but that there was no bad faith or willful misconduct on the part of the State in losing the evidence.

Pena then "re-urge[d] everything set out in the motion to suppress." In this record, that wasn't much. Of course, there was no "physical evidence recovered" that was being introduced, so there was nothing to suppress. After re-urging his motion, then counsel added

The confrontation clause, I think, is a big issue here from the defense standpoint. So I would object under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article One, Section Nine of the Texas Constitution under due process. Article One, Section Nineteen of the Texas Constitution and the Fifth and Fourteenth Amendments to the U.S. Constitution under the rights of the accused, and Article One, Section Ten of the Texas Constitution and the Sixth Amendment of the U.S. Constitution.

I would object under due course of law and object under 1.04, 1.051 and 1.06 of the Code of Criminal Procedure....[T]hose would address the issue of this nonexistent evidence being presented. °

The trial court overruled Pena's objections. The court did not specifically rule on the motion to suppress.

So the words "due course of law" and section 19 of the Texas Constitution were used. It did not notify the court of anything more than the general ground of the complaint; nothing specific. It did not notify me of anything more than that either. But it certainly would not have put anyone on notice that the Texas Constitution's due course of law provision provided broader protection than the United States Constitution's due process clause.

Pena claims in his brief that his counsel "based his objections on due process rights guaranteed under both the U.S. and Texas Constitutions, . . .". He mentioned both in his objection, but he did not argue that the two were any different. He did not make this argument at trial, and he did not make this argument in his brief.

Although Pena claims on appeal that he was denied due process and due course of law by the State's failure to provide material evidence before and during trial, he does not present any argument or authority as to the protection of the Texas Constitution or how that protection differs in any way from that offered by the United States Constitution. Only three Texas cases are cited by Pena in his brief and none discuss the due course of law provision. In fact, Pena specifically argues that his case falls within the parameters of *Youngblood,* a federal due process standard. Without argument or any briefing, the majority takes it upon itself to raise the possibility of a difference in the level of protection between the Texas and United States Constitutions and proceeds to determine the expansiveness of the due course of law provision in the Texas Constitution.

What are we doing? We've been told not to reverse convictions on theories not

raised on appeal or in the court below. *Hailey v. State,* 87 S.W.3d 118 (Tex.Crim. App.2002); *Gerron v. State,* 97 S.W.3d 597 (Tex.Crim.App.2003). Yet we continue to do so. *See Hackett v. State,* 2005 Tex.App. LEXIS 1116 (Tex.App.-Waco March 10, 2005, no pet. h.) (Gray, C.J., concurring, Feb. 9, 2005); *Olivas v. State,* 153 S.W.3d 108 (Tex.App.-Waco 2004, no pet.) (Gray, C.J., dissenting); *Conde v. State,* 135 S.W.3d 252 (Tex.App.-Waco 2004, no pet.) (Gray, C.J., concurring).

And, where a party fails to argue a distinction between the Texas and United States Constitutions, the Court of Criminal Appeals routinely declines to make the argument for the party in that situation. *Luquis v. State,* 72 S.W.3d 355, 364 (Tex. Crim.App.2002) ("Appellant makes no distinction between his rights under the Texas and federal constitutions. Therefore we will treat them as being the same in this context."); *Smith v. State,* 898 S.W.2d 838, 847 (Tex.Crim.App.1995) ("Appellant proffers no argument or authority of how the protection offered by the Texas Constitution differs from the protection guaranteed by the U.S. Constitution. [citations omitted]. We are not inclined to make appellant's arguments for him."); *Johnson v. State,* 853 S.W.2d 527, 533 (Tex.Crim.App. 1992) ("We decline to pursue appellant's Texas Constitutional arguments for him."). So should we.

I dissent.