IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0966-05






JOSE PENA, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE TENTH COURT OF APPEALS


LEON COUNTY





 Keller, P.J., delivered the opinion of the Court in which PRICE,
JOHNSON, HOLCOMB, and COCHRAN, JJ., joined. WOMACK, J., filed a
concurring opinion. MEYERS, J., filed a dissenting opinion. HERVEY, J., filed a
dissenting opinion in which KEASLER, J., joined.


 The Court of Appeals reversed appellant's conviction after determining that the Texas
Constitution grants broader protection than the United States Constitution when evidence is lost or
destroyed. This issue was neither raised on appeal nor briefed by the parties. We hold that the Court
of Appeals erred in failing to give the parties the opportunity to brief the issue.

I. BACKGROUND


 Appellant was charged with possession of marijuana. Before trial, he requested an
independent analysis of the evidence. It was discovered that the alleged marijuana had been
destroyed and, except for a lab report, all records documenting the testing of the evidence were lost. 
Appellant objected, contending that admission of the lab report after the physical evidence had been
destroyed would violate due process under the Fourteenth Amendment to the United States
Constitution and due course of law under the Texas Constitution. (1) His objections were overruled,
the lab report was admitted, and appellant was ultimately convicted.

 On appeal, appellant contended that the trial court "erred in admitting testimony of test
results concerning alleged marijuana when this material evidence and the original file concerning
this evidence had been destroyed or lost prior to trial and without independent testing." In support
of his claim, appellant relied upon federal caselaw addressing the due process implications of
destroying potentially exculpatory evidence - specifically California v. Trombetta (2) and Arizona v.
Youngblood. (3) He did not claim that the Texas Constitution conferred broader protection than that
articulated in the federal cases. The State's brief likewise discussed the federal standard and argued
that appellant had not made the requisite "bad faith" showing.

 On its own, the Court of Appeals decided to address whether the Texas Constitution's Due
Course of Law provision grants defendants greater protection than the United States Constitution. (4) 
The court explained that the Texas Constitution must be interpreted independently of the United
States Constitution. (5) In conducting this independent interpretation, the appellate court determined
that the language of the Due Course of Law provision is different from and "arguably significantly
broader than" the language found in the counterpart provision of the United States Constitution. (6) 
The court also found that some other states had rejected Youngblood in interpreting their own
constitutions, that "bad faith" is an unworkable standard, that serious questions concerning the
fundamental fairness of the trial can occur even in the absence of bad faith, and that recent findings
of negligence in the handling of evidence in crime labs across the country - and in Texas - "demand
that courts exercise caution when analyzing lost or destroyed evidence." (7)

 The appellate court held that the Texas Constitution requires the State to preserve evidence
that has apparent exculpatory value when comparable evidence is not reasonably available to the
defendant. (8) When exculpatory evidence is lost or destroyed, the State's case must be dismissed. (9)
When evidence that is potentially useful is lost or destroyed, a balancing test should govern whether
the State's case should be dismissed. (10) The court would balance "the degree of negligence involved"
against "the significance of the destroyed evidence considered in light of the probative value and
reliability of secondary evidence that remains available," and "the sufficiency of the other evidence
used at trial to support the conviction." (11) After conducting this balancing test in the present case, the
Court of Appeals concluded that appellant had been denied due course of law under the Texas
Constitution. (12)

 Chief Justice Gray dissented, complaining, among other things, that appellant did not argue
in his brief that the Texas Constitution provided greater protection: 

Although Pena claims on appeal that he was denied due process and due course of
law by the State's failure to provide material evidence before and during trial, he does
not present any argument or authority as to the protection of the Texas Constitution
or how that protection differs in any way from that offered by the United States
Constitution. Only three Texas cases are cited by Pena in his brief and none discuss
the due course of law provision. In fact, Pena specifically argues that his case falls
within the parameters of Youngblood, a federal due process standard. Without
argument or any briefing, the majority takes it upon itself to raise the possibility of
a difference in the level of protection between the Texas and United States
Constitutions and proceeds to determine the expansiveness of the due course of law
provision in the Texas Constitution.


What are we doing? We've been told not to reverse convictions on theories not 
raised on appeal or in the court below. Yet we continue to do so. And, where a party
fails to argue a distinction between the Texas and United States Constitutions, the
Court of Criminal Appeals routinely declines to make the argument for the party in
that situation. So should we. (13)


 The State filed a petition for discretionary review. In its first ground, the State asks: "Did
the Court of Appeals err by reversing the trial court's decision on a legal theory not presented either
to the trial court or to the Court of Appeals by the complaining party?" Under this ground, the State
complained, in part, that appellant made "no argument in the Court of Appeals that the relevant
provisions of the Texas Constitution should be construed differently, or that they provided a greater
level of protection to the defendant, than those of the United States Constitution. Instead his entire
argument [was] based upon federal authority." (14) The State further complained that the appellate
court's action deprived the State of the opportunity to address the issue:

As a result of the Court of Appeals'[s] deciding this case on an issue not presented
either to the trial court or to the court of appeals, the State did not have an
opportunity to address whether the Texas Constitution provides a greater level of
protection to the defendant than does the United States Constitution, and, if it does,
whether the State complied with the additional requirements of the Texas
Constitution.


II. ANALYSIS


 We have previously held, and reaffirm today, that appellate courts are free to review
"unassigned error" - a claim that was preserved in the trial below but was not raised on appeal. (15) 
In conducting such a review, however, the question becomes whether certain circumstances obligate
a court to assign such error by ordering briefing from the parties. We recognize that many, if not
most, of the types of error that would prompt sua sponte appellate attention need not be assigned
because the error involved constitutes an obvious violation of established rules. Novel constitutional
issues are a different matter. 

 The United States Supreme Court has recognized the desirability of avoiding the adjudication
of constitutional issues when at all possible: "If there is one doctrine more deeply rooted than any
other in the process of constitutional adjudication, it is that we ought not to pass on questions of
constitutionality . . . unless such adjudication is unavoidable." (16) This maxim includes the Supreme
Court's practice not "to formulate a rule of constitutional law broader than is required by the precise
facts to which it is to be applied." (17) This restraint is exercised in part out of respect for other
branches or departments of government:

[W]hen this court is called on in the course of the administration of the law to
consider whether an act of Congress, or of any other department of the government,
is within the constitutional authority of that department, a due respect for a
co-ordinate branch of the government requires that we shall decide that it has
transcended its powers only when that is so plain that we cannot avoid the duty. In
such cases it is manifestly the dictate of wisdom and judicial propriety to decide no
more than is necessary to the case in hand. (18) 


The principle is not limited to the federal courts, but is widely recognized in state courts as well -
a fact the Supreme Court observed in a case flowing into the federal system from this court, where
we had adhered to the principle:

The ground for the discharge of the petitioner in this case, as given by the [federal]
court below, was because of the opinion of that court that the anti-trust law of the
State of Texas violated the Constitution of the United States, and was therefore void.
The question of the validity of that act of course exists whether the case be in the
state court or a hearing transferred to the Federal court by virtue of the writ of habeas
corpus. It is the duty of the state court, as much as it is that of the Federal courts,
when the question of the validity of a state statute is necessarily involved as being in
alleged violation of any provision of the Federal Constitution, to decide that question,
and to hold the law void if it violate that instrument. But the state court is not bound
to decide the constitutional question when there are other grounds for reversing a
conviction under the law, upon pain of having its omission furnish a ground for
Federal interference.


* * *



The first circumstance stated is that the Court of Criminal Appeals did not decide,
when it had the opportunity, the question of the constitutionality of the act in
question.


* * *



It is matter of common occurrence - indeed, it is almost the undeviating rule of the
courts, both state and Federal - not to decide constitutional questions until the
necessity for such decision arises in the record before the court. This court has
followed that practice from the foundation of the Government, and we can see no
reason for just criticism upon the action of the state court in refusing to decide the
question of the constitutionality of this act, when, at the same time, it held in
substance that there was no evidence upon which to sustain the conviction of the
defendant upon the indictment then before it, and that therefore the judgment should
be reversed. (19)


 Of course, addressing an issue that was not originally briefed may be "necessary" because
the case's outcome necessarily depends upon the issue's resolution. Nevertheless, the principle of
deciding novel constitutional questions only when necessary also informs how courts should go
about deciding those issues. When the issue is a novel one of constitutional dimension that threatens
to overturn the acts of another branch or department of government, the court should exercise special
care in deliberating on the matter. The Supreme Court has recognized that, even in the appellate
context, the adversarial system provides crucial safeguards to help ensure correct decision-making: 

The paramount importance of vigorous representation follows from the nature of our
adversarial system of justice. This system is premised on the well-tested principle
that truth - as well as fairness - is best discovered by powerful statements on both
sides of the question.


* * *



The need for forceful advocacy does not come to an abrupt halt as the legal
proceeding moves from the trial to appellate stage. Both stages of the prosecution,
although perhaps involving unique legal skills, require careful advocacy to ensure
that rights are not forgone and that substantial legal and factual arguments are not
inadvertently passed over. (20)


 We do not suggest that an appellate court must order briefing every time it decides to raise
on its own a point of error not briefed by the parties. As we indicated earlier, some rules -
constitutional or otherwise - are already firmly established through prior litigation, having already
passed through the fires of adversarial testing. And rules that do not expand the reach of the federal
or state constitutions can be overturned by the Legislature; although the cost of mistakes regarding
those types of rules is high, a remedy exists. But a novel rule that expands the reach of a
constitutional provision can hamstring the Legislature as well as frustrate trial courts and prosecutors
who relied upon the rule that was previously in effect. 

 Different treatment of these types of rules can be seen in Ohio, where, as in Texas, "nothing
prevents a court of appeals from passing upon an error which was neither briefed nor pointed out by
a party." (21) In response to an intermediate appellate court's sua sponte decision to declare a forfeiture
statute unconstitutional, the Ohio Supreme Court cautioned that "out of fairness to the parties, a
court of appeals which contemplates a decision upon an issue not briefed before it should . . . give
the parties notice of its intention and an opportunity to brief the issue." (22) In rebuking the court of
appeals, Ohio's high court further remarked that "there was no such notice or opportunity for
briefing given to the parties by the court of appeals. The first notice that constitutional issues were
being considered was given when the court of appeals'[s] decision was released." (23) On the other
hand, in a later case when a party complained that the court of appeals had improperly raised on its
own the applicability of the statute of limitations, the Ohio Supreme Court disagreed, stating that its
prior decision was distinguishable because "the issue decided by the court of appeals did not involve
the constitutionality of a statute." (24) Of course, even when an appellate court is not obligated to order
briefing on an issue it has decided to raise on its own, it may do so in its discretion. 

 Here, the Court of Appeals decided on its own to expand the reach of the Texas Constitution
without first requesting briefing from the parties. We hold that its failure to afford the parties an
opportunity to brief the issue was error. 

 We vacate the judgment of the Court of Appeals and remand the case to that court for
proceedings consistent with this opinion. 

 Keller, P.J.

Delivered: April 26, 2006

Publish
1. U.S. Const., Amend. XIV ("nor shall any State deprive any person of life, liberty or
property without due process of law"); Tex. Const., Art. I, §19 ("No citizen of this State shall be
deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised,
except by the due course of the law of the land"). 
2. 467 U.S. 479 (1984).
3. 488 U.S. 51 (1988).
4. Pena v. State, 166 S.W.3d 274, 278-283 (Tex. App.-Waco 2005).
5. Id. at 278.
6. Id.
7. Id. at 278-281.
8. Id. at 281.
9. Id. 
10. Id. 
11. Id. at 282.
12. Id. at 283.
13. Id. at 285-286 (Gray, C.J., dissenting)(citations omitted).
14. The State also contends that error was forfeited by appellant's failure to claim broader
protection in the Texas Constitution at trial. We decline to address this contention at this time.
15. Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).
16. Clinton v. Jones, 520 U.S. 681, 690 (1997)(quoting Spector Motor Service v.
McLaughlin, 323 U.S. 101, 105 (1944))(ellipsis in Clinton).
17. Id. (quoting Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 461
(1945)).
18. Trade Mark Cases, 100 U.S. 82, 96 (1879).
19. Baker v. Grice, 169 U.S. 284, 291-292 (1898).
20. Penson v. Ohio, 488 U.S. 75, 84-85 (1988).
21. State v. 1981 Dodge Ram Van et al., 36 Ohio St. 3d 168, 169, 522 N.E.2d 524, 526
(1988).
22. Id.
23. Id. The Ohio Supreme Court also found that the court of appeals erred in addressing
the issue because it had not been preserved by objection at trial. Id. at 526-527.
24. Browning v. Burt, 66 Ohio St. 3d 544, 564, 613 N.E.2d 993, 1008
(1993)(distinguishing State v. 1981 Dodge Ram Van), cert. denied sub nom., St. Elizabeth Med.
Ctr. v. Browning, 510 U.S. 1111 (1994).