Don TERRELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–05–00151–CR.

Court of Appeals of Texas, Waco.

May 23, 2007.

Lane D. Thibodeaux, Law Office of Lane Thibodeaux, Bryan, for appellant.

Bill R. Turner, Brazos County Dist. Atty., Bryan, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Don Terrell was convicted of indecency with a child and was sentenced to thirteen years in prison. He appeals, asserting two issues. We will affirm.

### Missing Evidence

Terrell's first issue contends that the trial court erred in denying his motion to dismiss because the State's failure to preserve the audiotape and videotape of Terrell's police interview and the audiotape of the victim's police interview violated his due course of law rights under the Texas Constitution. *See* TEX. CONST. art. I, § 19.

We recently held that the Texas Constitution's due course of law provision provides a greater level of protection than the due process clause of the Fourteenth Amendment and that, under it, "the State has a duty to preserve material evidence which has apparent exculpatory value, encompassing both exculpatory evidence and evidence that is potentially useful to the defense." *Pena v. State,* 226 S.W.3d 634, 651 (Tex.App.-Waco 2007, no pet. h.). We adopted the following approach as the standard for a due course of law claim:

the following three factors should be weighed to decide whether a defendant's state constitutional due process rights have been violated by the State's failure to preserve potentially exculpatory evidence:

(1) would the evidence have been subject to discovery or disclosure;

(2) if so, did the state have a duty to preserve the evidence; and

(3) if there was a duty to preserve, was that duty breached, and what consequences should flow from the breach.

*Id.* at 651 (citing *Deberry v. State,* 457 A.2d 744, 750 (Del.1983)).

With regard to the third factor of this analysis, . . . :

[W]e draw a balance between the nature of the State's conduct and the degree of prejudice to the accused. The State must justify the conduct of the police or prosecutor, and the defendant must show how his defense was impaired by loss of the evidence. In general terms, the court should consider "(1) the degree of negligence or bad faith involved, (2) the importance of the lost evidence, and (3) the sufficiency of the other evidence adduced at the trial to sustain the conviction." *United States v. Loud Hawk,* 628 F.2d 1139, 1152 (9th Cir. 1979) (Kennedy, J., concurring) (quoting *United States v. Higginbotham,* 539 F.2d 17, 21 (9th Cir.1976)).

*Id.* at 651 (quoting *Deberry,* 457 A.2d at 752).

N.M., the fourteen-year-old victim, testified that she was standing alone on the street corner near her home in Bryan around 8:00 a.m., waiting on the school bus. A black four-door car drove up right next to her and stopped; it had driven by a minute before and the driver, a black male, had looked at her. When the car stopped, N.M. felt uncomfortable, and when she looked to see why the car was not driving off, she saw that the driver's pants were unzipped, his penis was exposed, and he was masturbating while looking at her. She could not get to her house because of where the car was stopped, so she looked away. A couple of minutes later, her sister came out and

yelled "hi," but N.M. was too afraid to scream. As the car left, N.M. got its license plate number and went home, called 9–1–1, and told the operator the license plate number. Kelly Davis, a police officer, came to N.M.'s home and took a report, and N.M. provided a written statement. Davis described N.M. as visibly shaken and scared. N.M.'s sister described her after the incident as "really shaking" with watery eyes, as if N.M. had been crying or was about to cry.

Davis learned that the car, a black Cadillac, was registered to Terrell's mother-in-law and that it was being driven by her daughter (Terrell's wife). Davis then went to Terrell's house and located the car; its hood was warm to the touch. Davis knocked on the door, but no one answered. She returned to the station to have a photo lineup created, and while she was writing her report, Terrell showed up. Detective Neveu interviewed Terrell; the interview was audiotaped and videotaped. Davis watched and listened to the interview by way of a television monitor; Terrell did not know that he was being recorded or that Davis was watching and listening. Davis could not locate either tape, and she did not know what happened to them. Later that day, Davis and Neveu took a tape-recorded statement from N.M. during which she identified Terrell as the driver from a photo lineup. Davis could not locate that audiotape either.

We will apply *Pena* to Terrell's claim that the State's failure to preserve these three tapes violated his due course of law rights. The first two *Pena* factors are not in dispute; the tapes were subject to disclosure and the State failed to preserve them. We thus turn to the third factor and what consequences should flow from the State's failure to preserve the tapes.

Because Davis was not the detective who interviewed Terrell, she did not personally retrieve the tapes from the recorders and "property-index" them. Davis testified that the audiotape and videotape of Terrell's interview were not property-indexed under the correct case number, and though she went back and made a log of all tapes that were property-indexed from that date to the current date, she could not locate the tapes of Neveu's interview of Terrell. Davis testified to what occurred in the interview (she had made notes of the entire interview and had included them in her report), including the following:

- Terrell had heard about the allegations from his mother-in-law and had come to the station to clear his name.
- Terrell admitted that he had driven the Cadillac that morning.
- He claimed that he had been on the way to a tire shop but changed his mind and decided to go to the car wash. On the way to the car wash, the fuel light came on, so he decided to go home.
- Terrell admitted being in the general vicinity of the alleged offense and to seeing children waiting for the school bus.
- He said that he did see a young, fair-complected female standing alone by a stop sign. (This statement was unusual because Davis and Neveu had never said anything to Terrell about the victim.). Neveu did not ask Terrell why he focused on the girl or where she was standing.
- He denied exposing himself.
- Terrell did not request an attorney during the interview.

As for the tape-recorded statement of N.M., Davis said that N.M. immediately identified Terrell as the driver from a photo lineup. Because her identification was so fast, Davis had her look again, and she selected Terrell again.

*Degree of Negligence or Bad Faith*

■ The record reveals that Terrell's motion to dismiss was not made until both sides had rested and closed. The State thus had no reason to have called Detective Neveu as a witness to provide testimony about the missing tapes. Regardless, from Davis's testimony, it appears that the tapes were lost as the result of a mistake or negligence, and there is no evidence of any bad faith on the part of the officers or the prosecutor. At trial, Terrell's counsel conceded that there was no evidence of any intentional misconduct relating to the missing tapes. On the element of the degree of negligence or bad faith involved in the missing tapes, we find that it weighs against a due course of law violation.

*Importance of the Lost Evidence*

■ The significance of Terrell's interview is minor, as Davis testified to its key exculpatory information—that Terrell had come to the police station to clear his name and had denied committing the offense. Also, Terrell's employer corroborated that facet; he said that on the occasion Terrell went to the police station, Terrell told him he needed to leave work and take care of an emergency because some people were spreading some untrue rumors about him.

As for the lost tape of the interview of N.M. in which she identified Terrell in a photo lineup, that evidence is potentially significant, but its significance is tempered by the fact that Terrell's attorney adequately and effectively cross-examined N.M., impeaching her in several key areas. On the element of the importance of the missing tapes, we find that it weighs neither in favor of nor against a due course of law violation.

*Sufficiency of Other Evidence to Sustain the Conviction*

■ In this case, N.M.'s testimony alone was sufficient to support Terrell's convic-

tion. *See Abbott v. State,* 196 S.W.3d 334, 341 (Tex.App.-Waco 2006, pet. ref'd). The missing tapes were not critical to whether the State could establish Terrell's guilt beyond a reasonable doubt. This element weighs against a due course of law violation.

On the whole, we find little, if any, impairment to the defense caused by the State's mistake or negligence. Accordingly, we hold that the failure to preserve the tapes did not violate Terrell's due course of law rights. Terrell's first issue is overruled.

## Legal Sufficiency of Enhancement Paragraph

■ In his second issue, Terrell asserts that the evidence is legally insufficient to support the trial court's "true" finding on the enhancement paragraph. At punishment, the State introduced, without objection, a penitentiary packet containing Terrell's fingerprints and a judgment for Terrell's 1982 "aggravated rape" conviction. He was sentenced to thirty years in prison for that offense. After both sides rested, Terrell's counsel argued that Terrell was only age sixteen when the 1982 judgment was rendered and concluded that the State failed to prove a final conviction. On appeal, Terrell contends that the pen packet affirmatively shows that he was sixteen at the time that offense was committed, and thus the judgment is void because Terrell was too young to be convicted of the offense. *See* TEX. FAM. CODE ANN. § 51.02(2)(A) (Vernon Supp. 2006).

■ The State establishes a prima facie showing of a prior conviction by introducing a copy of the judgment and sentence in each case used for enhancement and connecting them with the defendant. *Johnson v. State,* 725 S.W.2d 245, 247 (Tex.

Crim.App.1987). Once the State introduces a judgment and sentence and connects the defendant with them, we presume regularity in the judgment. *Id.* The burden then shifts to the defendant, who must make an affirmative showing of any defect in the judgment, whether that is to show no waiver of indictment or no transfer order. *Id.* Terrell does not argue that the pen packet was inadmissible; he contends that he was not required to do anything further because the pen packet affirmatively showed on its face that his age was sixteen. He must do more, however. The defect that he must show was that there was no order transferring him from juvenile court to district court. *See id.;* TEX. FAM.CODE ANN. §§ 51.08, 54.02 (Vernon 2002 and Supp.2006). He did not make that showing. Because the State made a prima facie showing of Terrell's prior conviction, the evidence is legally sufficient to support the trial court's finding. We overrule Terrell's second issue.

Having overruled Terrell's two issues, we affirm the trial court's judgment.

Chief Justice GRAY concurring.

TOM GRAY, Chief Justice, concurring.

Don Terrell appeals his conviction for the offense of indecency with a child. *See* TEX. PENAL CODE ANN. § 21.11(a)(2)(A) (Vernon 2003). He was sentenced to 13 years in prison. Because the trial court did not err in denying Terrell's motion to dismiss based on the State's loss of evidence and because the evidence was legally sufficient to support the trial court's finding of the enhancement paragraph to

be true, I agree the judgment should be affirmed.

In his first issue, Terrell contends the trial court erred in denying his motion to dismiss because the State's failure to preserve the audio and video tapes of Terrell's non-custodial interview and the audio tape of the victim's interview violates the due course of law provision of the Texas Constitution. TEX. CONST. art I, § 19. Terrell relies solely on this Court's opinion in *Pena* to support his argument that the Texas Constitution affords greater protection than the due process clause of the United States Constitution as it pertains to lost or destroyed evidence. *Pena v. State,* 166 S.W.3d 274 (Tex.App.-Waco 2005), *vacated,* 191 S.W.3d 133 (Tex.Crim.App. 2006). But that decision was vacated by the Court of Criminal Appeals. Id.[1] Terrell provides no other explanation as to why the Texas Constitution affords greater protection than the United States Constitution. And we decline to make that argument for him. *See Johnson v. State,* 853 S.W.2d 527, 533 (Tex.Crim.App. 1992)("We decline to pursue appellant's Texas Constitutional arguments for him."). Further, the Texas Supreme Court has consistently held that the due course of law provision and the due process clause are equivalent. *Pena,* 166 S.W.3d at 283, n. 1 (Gray, C.J., dissenting). Therefore, I will use the United States Constitutional standard as adopted in *Youngblood* and its progeny to evaluate Terrell's issue. *See Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Under this standard, Terrell must show that the State acted in bad faith when it failed to locate the audio and video tapes. Id. at 58,

---

1. The majority held this appeal waiting on their new version of *Pena* for over one year. Terrell does not rely on *Pena* II. *See Pena v. State,* 226 S.W.3d 634 (Tex.App.-Waco 2007, no pet. h.). *Pena* II need not and should not be relied upon unless its precedential value is

established. Thus, I will disregard *Pena* II in my analysis and present as this concurring opinion the opinion I originally circulated on **May 3, 2006,** only editing as appropriate to make it a concurring opinion.

109 S.Ct. 333. However, Terrell's counsel affirmatively stated that there was no bad faith by the State in failing to locate the tapes. I agree his first issue should be overruled.

In his second issue, Terrell argues the evidence was legally insufficient to support the trial court's finding of "true" to the enhancement paragraph. At punishment, the State introduced, without objection, a penitentiary packet containing Terrell's fingerprints and a judgment and sentence for Terrell's conviction of "Aggravated Rape" in 1982. Terrell was sentenced to 30 years in prison for that offense. After both sides rested, counsel argued that Terrell was only 16 when the 1982 judgment was rendered and concluded that the State failed to prove a final conviction.

On appeal, Terrell contends that the pen packet affirmatively shows that he was 16 at the time the offense was committed, thus, the judgment is void because Terrell was too young to be convicted of the offense. *See* TEX. FAM.CODE ANN. §§ 51.02(2), 51.03(a), 51.04(a) (Vernon Supp.2006 and Vernon 2002). The State establishes a prima facie case of proof of a prior conviction by introducing copies of the judgment and sentence in each case used for enhancement and connecting them with the defendant. *Johnson v. State*, 725 S.W.2d 245, 247 (Tex.Crim.App. 1987). Once the State properly introduces a judgment and sentence and identifies appellant with them, we presume regularity in the judgments. Id. The burden then shifts to the defendant, who must make an affirmative showing of any defect in the judgment, whether that is to show no waiver of indictment or no transfer order. Id. Terrell does not argue that the pen packet was inadmissible. He contends he was not required to do anything further because the pen packet affirmatively showed on its face that his age was 16. However, he must do more. As the Court of Criminal Appeals stated in *Johnson*, the defect he must show is that there was no order transferring him from Juvenile Court to District Court. Id. *See* TEX. FAM.CODE ANN. § 51.08 (Vernon Supp.2006). He did not make that showing. The State made its prima facie showing, and the evidence is legally sufficient to support the trial court's finding. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). I agree Terrell's second issue should be overruled.

I concur only in the judgment of this Court that the trial court's judgment should be affirmed.