PD-1609-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/23/2015 1:25:01 PM
Accepted 1/29/2015 11:04:34 AM
ABEL ACOSTA
CLERK

PDR No. PD-1609-14

_____

In the Court of Criminal Appeals Texas

_____

CHRISTOPHER CAMACHO, Appellant

V.

THE STATE OF TEXAS

_____

On Appellant's Petition for Discretionary Review
From the Fourteenth Court of Appeals,
Appeal No. 14-13-00626-CR,
On Appeal from the 400th District Court
Of Fort Bend County, Texas
Cause No. 06-DCR-045165A

_____

PETITION FOR DISCRETIONARY REVIEW
FOR APPELLANT, CHRISTOPHER CAMACHO

_____

Oral Argument Requested

Michael C. Diaz
20228 Hwy. 6
Manvel, Texas 77578
Telephone: 281-489-2400
Facsimile: 281-489-2401
Texas Bar No. 00793616

Attorney for Appellant

FILED IN
COURT OF CRIMINAL APPEALS

January 29, 2015

ABEL ACOSTA, CLERK

i

## IDENTITY OF JUDGE, PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. Rule 68.4 (a), appellant certifies that the following is a complete list of the trial court judge, all the parties to the judgment or order appealed from, and the names and addresses of counsel in the trial and on appeal:

Trial Court Judge:
The Honorable Clifford Vacek
Presiding Judge 400th District Court
Fort Bend County, Texas

Appellant:
Christopher Camacho

Counsel for Appellant:
Michael C. Diaz (at trial and appeal)
20228 Hwy. 6
Manvel, Texas 77578
Brian Middleton-Trial
7322 Southwest Freeway, Suite 1980
Houston, Texas 77074

Counsel for the State of Texas:
John F. Healey Jr.-District Attorney
Chris Delozier-Trial
Bob Yack-Trial
John Harrity-Appeal
Fort Bend County, Texas District Attorney's Office
1422 Eugene Heimann Cir
Richmond, Texas 77469

# Table of Contents

Identity of judge, parties and counsel………………………………………………ii

Index of Authorities………………………………………………………………..v

Statement Regarding Oral Argument…………………………………………vi

Statement of the Case……………………………………………...…vii

Procedural History of the Case………………………………...……………viii

Grounds for Discretionary Review……………………………………………2

## GROUND ONE

### DID THE FOURTEENTH COURT OF APPEALS ERR BY REFUSING TO FIND THAT THE STATE ACTED IN BAD FAITH BY FAILING TO PRESERVE POTENTIALLY USEFUL EVIDENCE

### Ground One Sub Issue

### Was Appellant entitled to an adverse-inference jury instruction based upon the Motion to Suppress Violating The Due Course of Law Clause?

Reasons to Grant Review in Support of Ground for Review……………………2

Review is appropriate, under Tex. R. App. P. 66.3(a), because the Court Of Appeals has rendered a decision, which is in conflict with the decisions of another court of appeals on the same matter.

iii

Argument and Authorities In Support Of Grounds for Review……………………2

Argument and Authorities In Support Of Ground One Sub Issue……………..….10

Prayer for Relief…………………………………………………………………..11

Certificate of Compliance.………………………………………………………...13

Certificate of Service…...……………………………………………………….13

Appendix ..……………………………………………………………………..14

INDEX OF AUTHORITIES

CASES:

*Arizona v. Youngblood*, 488 U.S. at 57-58, 109 S.Ct. at 337……………..4, 9, 10

*Delgadillo v. State*, No. 08-01-00455-CR, 2004 WL 1375404, 2004 Tex.App. LEXIS 5455, *11 (Tex.App.-El Paso, June 17, 2004, pet. ref'd) (not designated for publication)…………………………………………………………………9

*Illinois v. Fisher*, 540 U.S. at 547-48, 124 S.Ct. at 1202…………………………….4

*Lolly v. State*, 611 A.2d 956, 960 (Del.1992)……………………………...…….9, 10

*Pena v. State,* 166 S.W.3d 274 (Tex.App.-Waco 2005)………………………2, 8, 10

*Pena v. State,* 226 S.W.3d 634 (Tex.App.-Waco 2007)……......................…2-8, 10

*State v. Vasquez,* 230 S.W.3d 744, 748-51(Tex. App.—Houston [14th Dist.] 2007, no pet.)……………………………………………………...…………2, 3, 6, 8

*State v. Ferguson*, 2 S.W.3d 912, 917 (Tenn.1999)………………………………..9

*Thorne v. Dept. of Public Safety*, 774 P.2d 1326, 1331, n. 9 (Alaska 1989)……..…9

*White v. State*, 125 S.W.3d 41 (Tex. App.-Houston [14th Dist.] 2003)…………….2

STATUTES, CODES AND RULES:

Tex. R. App. P. 9.4(i)……….…………………………………………... 13

Tex. R. App. P. 9.5……………………………...………………………...13

Tex. R. App. P. 66.3(a)……………………………...…………………...iii, 2, 3

Tex. R. App. P. 68.4(a)……………………………………………………..ii

Tex. R. App. P. 68.4(c)……………………………………………...............vi

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Tex. R. App. 68.4(c), counsel respectfully requests oral argument. Oral argument would be helpful because this case presents an issue that needs to be resolved by this Court. This appeal involves questions of law, questions of fact, public policy and procedure which cannot be adequately addressed, analyzed and evaluated through written communication alone. Oral argument is essential to emphasize the unique characteristics of these questions and to address the unforeseeable exigencies arising during the Court's consideration of this appeal.

## STATEMENT OF THE CASE

On January 25, 2010, Appellant, was indicted for Capital Murder. Appellant filed a motion to suppress and motion to dismiss based upon bad faith destruction of evidence. Appellant argued that the State had a Cadillac, the crime scene, in its possession and allowed it to be removed to a storage lot, and auctioned off, knowing that it contained blood spatter, which could have been exculpatory or inculpatory in nature, if the Appellants expert could have examined the car. The trial court denied Appellant's motion to suppress and motion to dismiss. The Court of Appeals held that the trial court did not err in determining that that the record adequately supports the trial court's implied finding that the State did not act in bad faith in failing to preserve potentially useful evidence and that the trial court did not abuse its discretion in denying appellant's motion to suppress.

Appellant also argued that he was entitled to an adverse-inference jury instruction based upon the testimony brought out at trial and based upon appellant's motion to suppress, which the trial court denied. The Court of Appeals held that Appellant has not shown that the lost Cadillac body was favorable or

material to his defense; he has shown, at most, that the evidence contained in the car's shell was potentially useful. This petition challenges these holdings.

## PROCEDURAL HISTORY OF THE CASE

On October 7, 2014, the Fourteenth Court of Appeals affirmed Appellant's conviction. Camacho v. State, No. 14-13-00626-CR, slip op. at 1-10, (Tex. App.-Houston [14th Dist.], October 7, 2014, pet. pending). On October 21, 2014, Appellant timely filed his motion for rehearing. The Fourteenth Court of Appeals overruled and denied Appellant's motion for rehearing on November 13, 2014. On January 29, 2015, Appellant timely filed this petition for discretionary review with the Texas Court of Criminal Appeals. TEX. R. APP. P. 4.1 and 68.2.

PDR No. PD-1609-14

_____

In the Court of Criminal Appeals Texas

_____

CHRISTOPHER CAMACHO, Appellant

V.

THE STATE OF TEXAS

_____

On Appellant's Petition for Discretionary Review
From the Fourteenth Court of Appeals,
Appeal No. 14-13-00626-CR,
On Appeal from the 400th District Court
Of Fort Bend County, Texas
Cause No. 06-DCR-045165A

_____

PETITION FOR DISCRETIONARY REVIEW
FOR APPELLANT, CHRISTOPHER CAMACHO

_____


To The Honorable Justices of the Court of Criminal Appeals:

Comes now Appellant, Christopher Camacho by, and through his attorney of record, Michael C. Diaz, and files this petition for discretionary review of the of the October 7, 2014, decision of the Fourteenth Court of Appeals of Texas in Camacho v. State, No. 14-13-00626-CR, slip op. at 1-10, (Tex. App.-Houston

1

[14th Dist.], October 7, 2014, pet. pending), and would respectfully show the Court

the following:

## GROUND ONE

## DID THE FOURTEENTH COURT OF APPEALS ERR BY REFUSING TO FIND THAT THE STATE ACTED IN BAD FAITH BY FAILING TO PRESERVE POTENTIALLY USEFUL EVIDENCE

### Ground One Sub Issue

### Was Appellant entitled to an adverse-inference jury instruction based upon the Motion to Suppress Violating The Due Course of Law Clause?

### Reasons to Grant Review in Support of Ground for Review

Review is appropriate, under Tex. R. App. P. 66.3(a), because the Court
Of Appeals has rendered a decision, which is in conflict with the decisions of
another court of appeals on the same matter, namely:

Ground One:  *State v. Vasquez,* 230 S.W.3d 744, 748-51(Tex. App.—Houston [14th Dist.] 2007, no pet.); *White v. State*, 125 S.W.3d 41 (Tex. App.-Houston [14th Dist.] 2003).

In conflict with: *Pena v. State*, 166 S.W.3d 274 (Tex.App.-Waco 2005); *Pena v. State,* 226 S.W.3d 634 (Tex.App.-Waco 2007)

## ARGUMENT AND AUTHORITIES IN SUPPORT OF GROUND FOR REVIEW ONE

In its October 7, 2014, opinion, the Fourteenth Court of Appeals affirmed

Appellant's conviction in determining that the trial court did not err in determining

2

that that the record adequately supports the trial court's implied finding that the State did not act in bad faith in failing to preserve potentially useful evidence and that that the trial court did not abuse its discretion in denying appellant's motion to suppress.

This Court should review this ground and review is appropriate under Tex. R. App. P. 66.3(a), because the Court of Appeals has rendered a decision which is in conflict with the decisions of another court of appeals on the same matter.

In its opinion, the Fourteenth Court of Appeals responded to Appellant's first point of error by citing and using case law which is in conflict with case law from another Court of Appeals decision on the same issue, which Appellant cited and used in his brief. The Fourteenth Court of Appeals used and cited the following case: *State v. Vasquez,* 230 S.W.3d 744, 748-51(Tex. App.—Houston [14th Dist.] 2007, no pet.)

In *Vasquez*, the Fourteenth Court of Appeals, held that "We stated, "[T]he Due Course of Law Clause provides the same protection as the Due Process Clause regarding the State's destruction of potentially useful evidence in a criminal prosecution." Id. We reached this conclusion by analyzing the nearly identical language of the state and federal clauses. Id.at 749-50.

*Vasquez*, which quoted *Pena III*, which Appellant cited in his brief, said that the United States Supreme Court has held that, if a defendant seeks to prove a federal due-process violation based on a state's destruction of potentially useful evidence, as opposed to material, exculpatory evidence, the defendant must show the state acted in bad faith in destroying the evidence. *Illinois v. Fisher, 540 U.S. at 547-48, 124 S.Ct. at 1202*; *Arizona v. Youngblood, 488 U.S. at 57-58, 109 S.Ct. at 337*. The *Youngblood* court described potentially useful evidence as "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id, 488 U.S. at 57-58, 109 S.Ct. at 337*.

The Due Course of Law Clause provides a greater level of protection than the Due Process Clause. *Pena v. State, 226 S.W.3d 634 (Tex.App.-Waco 2007)*, or *Pena III*. Under the Due Course of Law Clause, the State has a duty to preserve both material, exculpatory evidence and potentially useful evidence. To determine whether the loss or destruction of potentially useful evidence violates the Due Course of Law Clause, the *Pena III* court adopted the legal standard employed by the Delaware Supreme Court for the due process protections of the Delaware Constitution. *See id.* at 650-653. Under this standard, to determine if the state has violated the defendant's right to due process under the state constitution, courts balance the following factors:

(1) whether the evidence would have been subject to discovery or disclosure,

(2) if so, whether the state had a duty to preserve the evidence, and

(3) if there was a duty to preserve, whether that duty was breached, and what consequences should flow from the breach.

*See id.* at 650-651. With regard to the third element of this analysis, courts draw a balance between the nature of the state's conduct and the degree of prejudice to the accused. *See id.* Under this analysis, the state must justify the conduct of the police or prosecutor, and the defendant must show how his defense was impaired by loss of the evidence. *See id.* In general terms, courts applying this analysis should consider:

(1) the degree of negligence or bad faith involved,

(2) the importance of the lost evidence, and

(3) the sufficiency of the other evidence adduced at the trial to sustain the conviction.

*See id.* at 651. After applying this analysis to determine if the state violated the Due Course of Law Clause, a court finding a violation then would have to perform a constitutional harm analysis. *See id.* at 654. If a court determines then

that harmful constitutional error has occurred, the court should choose from three potential remedies for the loss or destruction of this evidence: (1) dismissal, (2) exclusion of related evidence, or (3) an adverse-inference jury instruction. *See id.* at 655. Applying this analysis, the *Pena III* court reversed and remanded based on its determination that harmful constitutional error had occurred and that the appropriate remedy was an adverse-inference jury instruction. *See id*. at 653-656. *State v. Vasquez,* 230 S.W.3d 744 (Tex.App.-Houston (14th Dist.) 2007).

During the motion to suppress hearing, the States called four witnesses to testify. Detective Kubricht acknowledged that the white Cadillac was the crime scene and a piece of evidence which he consented to being released to A&M Automotive without placing a hold on it. Detective Arredondo testified that he asked Kubricht if the Cadillac was available for release to A&M Automotive, and Kubricht told Arredondo that it was, without any special instructions. (RR 15 at 53). Abraham Mejorado testified that he is the owner of A&M Automotive and he was given no special instructions with regard to holding the Cadillac. (RR 15 at 59-61). Mejorado testified that the Cadillac was auctioned off after 90 days. (RR 15 at 61). Crime scene investigator, Chris Bronsell testified that the Cadillac was the crime scene. (RR 15 at 69). Bronsell also testified that there was spatter in other parts of the vehicle that weren't kept as evidence, such as the headliner and door posts. (RR 15 at 75). In addition, Bronsell testified that in his opinion and

based upon his training, in a double homicide case, all evidence should be kept until the disposition of the case and that the time frame makes no difference. (RR 15 at 75-76). Bronsell also testified that a hold could be placed on a vehicle which is removed to another wrecker company's lot and that this is typical. (RR 15 at 78). Appellant's expert, Louis Akin testified that the Cadillac was primary, critical evidence and he was unable to conduct his analysis because of the poor quality of the photographs and the absence of the crime scene. (RR 15 at 100-101). Akin testified that because of the absence of the Cadillac, his hypotheses were impaired. (RR 15 at 104). Middleton (appellant's co-counsel): "Okay. So, can I summarize your testimony that, with the seats being removed and being separated, it creates a disadvantage or impacts your analysis because of the spatial information that is -- that has now been removed from your analysis?" Akin: "Yes. As I think I said if I were to have the car available, I would have sat in the back right seat and see what I could see from there. I would have sat in the other seats and see what it's like to turn – one of the things I would like to know is how fast I could turn and leap from the driver's seat into the position where he wound up. Was it possible that he tried to spin around and grab the gun, and that's how he got shot? You can't tell those things like that from the photographs." (RR 15 at 108).

Applying the legal standard as quoted in *Pena III,* the State violated appellant's right to due process under the state constitution. The State had a duty to

preserve both material exculpatory evidence and potentially useful evidence which was the Cadillac. The Cadillac was subject to discovery, the State had a duty to preserve the vehicle, especially in a case such as this and this duty was obviously breached.

Applying the element of *Pena III*, to determine if the state violated the Due Course of Law Clause, the State failed to justify Kubricht's conduct of releasing the vehicle, by basically relying on photographs in a case of this magnitude. Furthermore, defense expert, Akin, testified that the Cadillac was primary, critical evidence and he was unable to conduct his analysis because of the poor quality of the photographs and the absence of the crime scene. Moreover, Akin testified that because of the absence of the Cadillac, his hypotheses were impaired.

There was a substantial degree of negligence involved with regard to Kubricht's actions. Kubricht not only acknowledged his department policy of preserving evidence, but the gravity of this case, yet he consented to the release of the vehicle.

Appellant respectfully urges this Court to follow *Pena III* because of the lack of remedies available to an accused and the absurd results that follow under *Vasquez*. In addition, Appellant relies on language in *Pena I* to show the difficulties for an accused when the State has lost evidence, such as, the practical

8

impossibility of proving bad faith on the part of the police, "Short of an admission by the police, it is unlikely that a defendant would ever be able to make the necessary showing to establish the required elements for proving bad faith." *Lolly v. State,* 611 A.2d 956, 960 (Del.1992); *State v. Ferguson,* 2 S.W.3d 912, 917 (Tenn.1999) (finding that proving bad faith is extremely difficult). The *Youngblood* decision could have the unfortunate effect of encouraging the destruction of evidence to the extent that evidence destroyed becomes merely potentially useful since its contents would be unprovable." *Thorne v. Dept. of Public Safety,* 774 P.2d 1326, 1331, n. 9 (Alaska 1989). Another reason touted by the states rejecting *Youngblood* is that the requirement of bad faith operates as a litmus test mandating no due process violation even when serious questions exist concerning the fundamental fairness of the trial. *Youngblood* "permits no consideration of the materiality of the missing evidence, or its effect on the defendant's case.... [It] substantially increases the defendant's burden, while reducing the prosecution's burden at the expense of the defendant's fundamental right to a fair trial." *Ferguson,* 2 S.W.3d at 916-17.

Even if a defendant's case approaches bad faith, such as adequate proof of gross negligence or reckless disregard, a due process violation cannot be found. *Delgadillo v. State,* No. 08-01-00455-CR, 2004 WL 1375404, 2004 Tex.App. LEXIS 5455, *11 (Tex.App.-El Paso, June 17, 2004, pet. ref'd) (not designated for

publication). The Delaware Supreme Court found that such a scenario would place the court in a difficult position.

The court must either find bad faith and dismiss the charges, despite facts which support only a finding of gross negligence, or find no bad faith and deny the defendant the benefit of a favorable inference, despite the loss of material evidence due to the State's negligence. In such a situation, the court is left with an all or nothing proposition leading to two equally unsatisfactory results. *Lolly,* 611 A.2d at 960.

*Youngblood* is both too broad and too narrow. It is too broad because it would require the imposition of sanctions even though a defendant has demonstrated no prejudice from the lost evidence. It is too narrow because it limits due process violations to only those cases in which a defendant can demonstrate bad faith, even though the negligent loss of evidence may critically prejudice a defendant. *Pena v. State*, 166 S.W.3d 274.

<u>Argument and Authorities in Support of Ground One Sub Issue</u>

The Court of Appeals incorrectly affirmed the trial court decision in not giving Appellant a jury instruction on adverse- inference as requested by Appellant. Based upon Appellant's Motion to Suppress and the testimony at trial,

the trial court should have found that harmful constitutional error occurred and provided the potential remedy of an adverse-inference jury instruction, based upon the motion to suppress and testimony at trial violating the Due Course Clause. Again citing *Pena III*, after applying this analysis to determine if the state violated the Due Course of Law Clause, a court finding a violation then would have to perform a constitutional harm analysis. *See id.* at *654*. If a court determines then that harmful constitutional error has occurred, the court should choose from three potential remedies for the loss or destruction of this evidence: (1) dismissal, (2) exclusion of related evidence, or (3) an adverse-inference jury instruction. *See id. at 655*.

From the dialogue mentioned above from the motion to suppress hearing, the Appellant clearly had shown through Akin's testimony that the Cadillac would have been favorable and material to his analysis.

PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant, Christopher Camacho, prays that this Court grant the Petition for Discretionary Review for Appellant, order briefing on this cause, and set it for submission at the earliest

11

possible date. Moreover, upon submission and review of the appellate record and the briefs and arguments of counsel, the Court find reversible error in the judgments of the Fourteenth Court of Appeals in appeal number 14-13-00626-CR and of the 400th District Court of Fort Bend County, Texas, cause number 06-DCR-045165A. In accordance with this Court's finding of reversible error, appellant also requests that the Court then issue its opinion and judgment reversing the judgments of the Fourteenth Court of Appeals and the 400th District Court of Fort Bend County, Texas, remand this cause to the 400th District Court of Fort Bend County, Texas, assess all costs of the appeal against Appellee, and order execution of its judgment in accordance with its opinion.

Respectfully submitted,

/s/Michael C. Diaz
Michael C. Diaz
20228 Hwy. 6
Manvel, Texas 77578
Telephone: 281-489-2400
Facsimile: 281-489-2401
State Bar No. 00793616
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. 9.4 (i) 3, I hereby certify that the foregoing document, Appellant's Petition for Discretionary Review, filed on January 23, 2015, has 3581 words, based upon the word count under Microsoft Word.

/s/ Michael C. Diaz
Michael C. Diaz
20228 Hwy. 6
Manvel, Texas 77578
Telephone: 281-489-2400
Facsimile: 281-489-2401
Texas Bar No. 00793616
E-mail: mjoeldiaz@sbcglobal.net
Attorney for Appellant

## CERTIFICATE OF SERVICE

In accordance with TEX. R. APP. P. 9.5, I, Michael C. Diaz, certify that a true and correct copy of the foregoing Petition for Discretionary Review has been served by hand delivery, to the Fort Bend County District Attorney's Office, 1422 Heimann Circle, 2nd Floor, Richmond, Texas 77469, on this the 23rd day of January, 2015.

/s/Michael C. Diaz

APPENDIX

**Affirmed and Memorandum Opinion filed October 7, 2014**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00626-CR

### CHRISTOPHER CAMACHO, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 06-DCR-045165A**

## M E M O R A N D U M    O P I N I O N

A jury convicted Christopher Camacho of capital murder of multiple persons,[1] and the trial court assessed his punishment at life imprisonment. Appellant contends that the trial court committed reversible error in denying appellant's (1) motion to suppress; and (2) proposed adverse-inference jury instruction. We affirm.

---

[1] *See* Tex. Penal Code Ann. § 19.03(a)(7) (Vernon Supp. 2014).

BACKGROUND

Pedro Cortez discovered a white Cadillac sedan parked in an empty field in Fort Bend County on the morning of January 21, 2004. Cortez observed a woman later identified as Vivian Michelle Moreno in the front passenger's seat jumping up and down and gasping for air. Kneeling before her, also on the front passenger's side, was a man later identified as Michael Montalvo. Cortez believed Moreno to be gravely injured and Montalvo to be dead. He called emergency dispatch.

Soon after receiving Cortez's call, Fort Bend County Sheriff's Department deputies and medical personnel arrived on the scene. The emergency responders extracted Moreno from the vehicle and rushed her to a nearby hospital. Once at the hospital, Moreno was pronounced dead from a gunshot wound to the head. She also exhibited multiple stab wounds on the right side of her face.

Deputies at the crime scene determined that Montalvo died from a gunshot wound to the head. They photographed the car with Montalvo's body inside; they also photographed the ground immediately surrounding the car and collected evidence including a bullet found on the front driver's side floor.

The Cadillac was towed to the sheriff's department headquarters for additional processing after Montalvo's body was removed. Once at headquarters, additional photographs of the interior and exterior of the car were taken. The Fort Bend County Sheriff's Department took approximately 100 photographs of the car, 48 of which were admitted at trial. These photographs show, among other things, pooled blood on the back passenger's side floor; they also show blood splatter on the front seats and front center console. Additionally, the photographs show a large crack in the front driver's side window.

In addition to taking photographs, the sheriff's department also dusted the

2

car for finger prints, vacuumed the car to collect trace evidence, and examined the car for gunshot residue. The sheriff's department found gunshot residue on the interior car door surfaces and on the front headrests.

Investigators at the sheriff's department removed many of the interior structural items of the car to check for additional trace evidence. They removed the front driver's seat, which was connected to the center console; the front passenger's seat; the rear seat; the carpet; the vents located on the dash; and the steering wheel. After separating these items and performing evidentiary tests, the investigators placed these items in an enclosed evidence storage unit. The investigators covered these items with plastic. The rest of the Cadillac's body was stored separately in an outdoor sheriff's department storage lot, where it remained for the next four years.

Fort Bend County Sheriff's Department Detective Michael Kubricht received a call in 2008 from a fellow detective, Carlos Arredondo, notifying him that the sheriff's department vehicle storage lot was full. Detective Arredondo asked for permission to transfer the Cadillac to a third-party storage lot. Detective Kubricht agreed, and the car was transferred to the third-party lot in January 2008.

The sheriff's department has a policy of keeping all evidence in a homicide case until the case is completely closed. Detective Kubricht testified in the trial court that he believed the third-party storage lot used by the Fort Bend County Sheriff's Department held vehicles until needed. He previously had worked with another sheriff's department that used a third-party storage lot to hold vehicles indefinitely. Unbeknownst to Detective Kubricht, the third-party storage lot used by the Fort Bend County Sheriff's Department typically auctioned off cars after 90 days. Pursuant to this policy, the car Detectives Kubricht and Arredondo sent to the third-party storage lot was auctioned off in 2008. Its whereabouts remain

unknown.

Appellant was indicted for the capital murders of Moreno and Montalvo in 2010. Before trial, appellant moved to suppress all evidence from the Cadillac and testimony concerning such evidence because the Cadillac's body was unavailable for his independent inspection. The trial court held a hearing on the matter and denied appellant's motion.

Trial commenced in 2013. Before the jury was charged, appellant's counsel requested an adverse-inference jury instruction, which the trial court denied. The jury found appellant guilty of the capital murders of Moreno and Montalvo. This appeal followed.

## ANALYSIS

Appellant's two appellate issues are intertwined. Appellant contends that his state constitutional rights were violated by the loss of the Cadillac's body because further testing of it could have provided exculpatory evidence. Appellant argues the trial court should have excluded related evidence or given an adverse-inference jury instruction.[2]

---

[2] In issue one, appellant additionally asserts that the trial court erred in denying his motion to dismiss. Nevertheless, appellant does not argue or ask for dismissal in his brief to this court, nor does he cite relevant legal authority or the record to support dismissal. An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. Tex. R. App. P. 38.1(i). An unargued point is considered waived. *Parker Cnty. Appraisal Dist. v. Francis*, 436 S.W.3d 845, 848 n.2 (Tex. App.—Fort Worth 2014, no. pet.). Because appellant has not argued or asked for dismissal, and has not cited relevant authority or the record, we hold appellant has waived his challenge to the trial court's denial of his motion to dismiss. *See Robinson v. Tex. Constr. Servs. Corp.*, No. 14-12-00723-CV, 2014 WL 1673821, at *5 (Tex. App.—Houston [14th Dist.] Apr. 24, 2014, no pet.) (mem. op.) (finding an appellant waived his challenge to the legal and factual sufficiency supporting the trial court's finding by not providing any argument, analysis, or citations to the record or legal authority); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (overruling an appellant's issue as insufficiently argued where the appellant asserted only that there are additional grounds for reversal and that

4

## I. Motion to Suppress

Appellant contends in his first issue that the trial court erred in denying his motion to suppress evidence relating to the preserved portions of the Cadillac's interior.

We review a trial court's ruling on a motion to suppress for abuse of discretion and will overturn the trial court's decision only if it lies outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We apply a bifurcated standard of review; we give almost complete deference to the trial court's determinations of credibility and historical facts, but review *de novo* the trial court's application of the law to the facts. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011); *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010). Where, as here, the trial court does not make explicit findings of fact, we presume the trial court made implicit findings supported in the record that buttress its conclusion. *Carmouche v. State,* 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000).

The Texas Constitution provides due process protection through the Due Course of Law Clause, which states, "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19. The Due Course of Law Clause is comparable to the Due Process Clause of the United States Constitution, which provides, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. While the two clauses are textually similar, appellant insists that the Due Course of Law Clause provides a

reversal would avoid injustice).

5

broader level of protection than the federal Due Process Clause.

Appellant relies exclusively on *Pena v. State*, 226 S.W.3d 634, 653 (Tex. App.—Waco 2007), *rev'd*, 285 S.W.3d 459 (Tex. Crim. App. 2009). *Pena* concluded that the Due Course of Law Clause standard provides greater protection than the Due Process Clause to defendants faced with the State's loss or destruction of potentially exculpatory evidence. *Id.* at 651-56. Key to this standard is a balancing test. *Id.* at 651. *Pena* focused on (1) whether the evidence would have been subject to discovery or disclosure; (2) whether the State had a duty to preserve the evidence; and (3) if there was a duty, whether the duty was breached and what consequences should flow. *Id.* In turn, the third element focused on (1) the degree of negligence or bad faith involved; (2) the importance of the lost evidence; and (3) the sufficiency of the other evidence adduced at trial to sustain the conviction. *Id.* Applying this test, *Pena* held that a due course of law violation existed based on the State's destruction of potentially exculpatory evidence. *Id.* at 653-56. The Court of Criminal Appeals reversed, holding that the defendant failed to preserve for review his due course of law claim. *Pena*, 285 S.W.3d at 464.

Appellant misplaces his reliance on *Pena* because binding precedent in this court rejects the *Pena* standard. *See State v. Vasquez*, 230 S.W.3d 744, 748-51 (Tex. App.—Houston [14th Dist.] 2007, no pet.). We stated, "[T]he Due Course of Law Clause provides the same protection as the Due Process Clause regarding the State's destruction of potentially useful evidence in a criminal prosecution." *Id.* We reached this conclusion by analyzing the nearly identical language of the state and federal clauses. *Id.* at 749-50; *see also Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) ("While the Texas Constitution is textually different in that it refers to 'due course' rather than 'due process,' we

regard these terms as without meaningful distinction."). *Vasquez* has not been overruled by a higher court or this court sitting *en banc*, nor has there been an intervening and material change in statutory law. Accordingly, *Vasquez* controls here. *See Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Absent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel decision or an intervening and material change in the statutory law, this court is bound by the prior holding of another panel of this court.").[3]

Under *Vasquez*, the State must preserve material, exculpatory evidence. *See Vasquez*, 230 S.W.3d at 747; *see also California v. Trombetta*, 467 U.S. 479, 488 (1984). Appellant does not contend that the Cadillac's body constitutes material, exculpatory evidence.

Where lost or destroyed evidence is merely "potentially useful," due process is not violated "unless a criminal defendant can show bad faith on the part of the police." *Arizona v. Youngblood,* 488 U.S. 51, 58 (1988); *see also Illinois v. Fisher,* 540 U.S. 544, 547-48 (2004) (reaffirming the *Youngblood* standard). "Potentially useful" evidence is "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57-58. Appellant's expert testified that the Cadillac's disappearance prevented him from determining whether evidence

---

[3] No other Texas appellate court has adopted the due course of law standard discussed in *Pena*; at least six courts of appeals, including this one, have applied the federal due process standard for determining whether a defendant's state constitutional rights have been violated by the State's failure to preserve potentially exculpatory evidence. *See Jones v. State*, 437 S.W.3d 536, 540 (Tex. App.—Texarkana 2014, no. pet.); *Higginbotham v. State*, 416 S.W.3d 921, 926 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Vasquez*, 230 S.W.3d at 751; *McGee v. State*, 210 S.W.3d 702, 705 (Tex. App.—Eastland 2006, no pet.); *Salazar v. State,* 185 S.W.3d 90, 92 (Tex. App.—San Antonio 2005, no pet.); *see also Alvarado v. State*, No. 07–06–0086–CR, 2006 WL 2860973, at *3 (Tex. App.—Amarillo Oct. 9, 2006, no pet.) (mem. op., not designated for publication).

contained in the car's shell was exculpatory or inculpatory. Therefore, the Cadillac's body is at most potentially useful evidence.

The trial court did not make findings of fact; it orally rejected appellant's motion to suppress after a hearing on the matter. Where the trial court does not make explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling. *Carmouche*, 10 S.W.3d at 327-28. In other words, we assume the trial court made implicit findings of fact supported in the record that buttress its conclusions. *Id.* Viewing the record in this light, we conclude that the evidence supports the trial court's implicit finding that the State did not lose or destroy the body of the car in bad faith.

Fort Bend County Sheriff's Department detectives testified that they mistakenly transferred the vehicle at issue in this case to a third-party storage lot, which did not have a procedure for preserving vehicles indefinitely. Detective Kubricht testified that he approved the transfer while under the mistaken belief that the vehicle would be preserved. Detective Arredondo testified that he had no knowledge of this case at the time he transferred the vehicle, nor did he know of the importance of the vehicle to the case. Both individuals testified that they held no animus towards appellant when they transferred the vehicle. Viewing the evidence in the light most favorable to the trial court's ruling, we hold that the record adequately supports the trial court's implied finding that the State did not act in bad faith in failing to preserve potentially useful evidence.

Accordingly, we hold that the trial court did not abuse its discretion in denying appellant's motion to suppress. *See Vasquez*, 230 S.W.3d at 747-48 (affirming denial of motion to suppress blood-test results performed on an accused intoxicant's blood sample where the trial court found that the blood sample was not destroyed in bad faith).

## II.  Jury Instruction

Appellant argues in his second issue that the trial court erred by failing to include an adverse-inference jury instruction in the charge.

Article 36.14 of the Texas Code of Criminal Procedure requires the trial court to give the jury a written charge, setting forth the law applicable to the case. Tex. Code Crim. Proc. art. 36.14 (Vernon 2007).  We review a claim of jury charge error using the two-step procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).  *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).  We first determine whether there is error in the charge.  *Id.* Then, if error is found, we analyze that error for harm.  *Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013).

Appellant requested an adverse-inference jury instruction, which the trial court denied.  The jury charge did not include any instruction on presumptions the jury may or must make regarding the State's failure to produce the Cadillac's body for appellant's independent inspection. Citing *Pena*, 226 S.W.3d at 655, appellant contends that an adverse-inference instruction was mandated to cure a due course of law violation.

Appellant has not established a due course of law violation; thus, he has not established entitlement to an adverse-inference jury instruction.  Moreover, *Pena* does not control.  *See Vasquez*, 230 S.W.3d at 748-51.  Under binding precedent, the trial court did not err in refusing appellant's adverse-inference instruction.  A criminal defendant requesting an adverse-inference instruction allowing the jury to infer lost or destroyed evidence would have produced a result favorable to the defendant must show that the evidence was favorable and material. *White v. State,* 125 S.W.3d 41, 43-44 (Tex. App.—Houston [14th Dist.] 2003), pet. ref'd). Appellant has not shown that the lost Cadillac body was favorable or material to

his defense; he has shown, at most, that the evidence contained in the car's shell was potentially useful. Accordingly, the trial court did not err in refusing an adverse-inference instruction. *See id.* at 44 (trial court did not err in refusing an adverse-inference instruction where the defendant could show only that the unpreserved evidence might have been favorable to his defense).

We overrule appellant's second issue. *See Celis*, 416 S.W.3d at 42 (when there is no charge error, the court need not conduct a harm analysis).

## CONCLUSION

Having overruled appellant's two issues, we affirm the trial court's judgment.

/s/     William J. Boyce
          Justice


Panel consists of Justices Boyce, Busby, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).